The **MAY DEPARTMENT STORES COM-PANY, d/b/a The May Company,** Petitioner,

v.

The **NATIONAL LABOR RELATIONS BOARD,** Respondent.

No. 14940.

United States Court of Appeals Sixth Circuit.

May 9, 1963.

Edward J. Simerka and Eugene B. Schwartz, Cleveland, Ohio, (W. K. Stanley, Stanley, Smoyer & Schwartz, Cleveland, Ohio, on the brief), for petitioner.

Thomas E. Shroyer, Washington, D. C., on the brief for American Retail Federation as Amicus Curiae.

Stephen B. Goldberg, Washington, D. C., (Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, James C. Paras, Stephen B. Goldberg, Attys., N. L. R. B., Washington, D. C., on the brief), for respondent.

Before WEICK and O'SULLIVAN, Circuit Judges, and BOYD, District Judge.

BOYD, District Judge.

The May Department Stores Company has petitioned this Court for review of an order of the National Labor. Relations Board. The Board found that petitioner (hereinafter the Company) had, during the course of an organizational campaign, engaged in conduct which violated Section 8(a) (1) of the National Labor Relations Act (hereinafter the Act). The Board has filed a

2. See Huffman v. United States, 5 Cir., 1962, 297 F.2d 754, 759, n. 1 [dissenting opinion].

cross-petition for enforcement of its order. By leave of this Court amicus curiae briefs have been filed in the cause by the American Retail Federation and by the Retail Store Employees Union Local 880, Retail Clerks International Association, AFL-CIO.

The Company owns and operates two large retail department stores in Cuyahoga County, Ohio. One of its stores is located in downtown Cleveland, and the other is located in the City of University Heights. In 1959 the Retail Store Employee's Union, Local 880, AFL-CIO and Office Employees International Union, Local 17, AFL-CIO, commenced organizational activities among employees of the Company's two stores. An election among said employees was conducted under the supervision of the Board on April 28, 1960. Of the 2,894 ballots cast by the employees 891 were for Union representation and 1,959 were against. The remaining ballots were either challenged or void. The within unions, as joint petitioners, filed with the Board's Regional Director objections to conduct on the part of the Company allegedly affecting the results of the election. The Board directed a hearing as to only one of the objections. This objection, in substance, charged that an unfair labor practice was committed when the Company's representatives addressed employees on company premises and on company time, while enforcing a broad, privileged rule against solicitation and thereafter refusing the Union's request for opportunity to address the employees under similar conditions; that is, on company premises and on company time. The

Board's Trial Examiner who conducted the hearing, recommended in his intermediate report that the complaint against the Company be dismissed. The Board, with two members dissenting, rejected the Examiner's recommendations. The Board majority found that the above conduct of the Company constituted a violation of Section 8(a) (1) of the Act,[1] ordered that the Company cease and desist from such conduct during organizational campaigns, ordered the posting of the usual notice with guarantees of compliance, and set aside the election.[2]

The Board adopted the Trial Examiner's findings of fact insofar as they were consistent with the Board's decision and order. The facts upon which the Board apparently based its decision and order are not in dispute and reflect the following:

The two unions here involved (hereinafter the Union) began organization efforts among the Company's employees in 1959. The Company during the campaign period had in force a broad no-solicitation rule. This rule forbade non-employees to solicit for any purpose on the Company's property. It also prohibited solicitation by employees during the working time of either the employee soliciting or the employee being solicited. Further, the rule prohibited solicitation by any employee during store opening hours on any portion of the Company's premises normally visited by the public or where noise or talking was not allowed.

The Company's representatives, on several occasions prior to the April 20,

1. Title 29 U.S.C. § 158. Unfair labor practices.
   "(a) It shall be an unfair labor practice for an employer—
   "(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;"
   § 157. Right of employees as to organization, collective bargaining, etc.
   "Employees shall have the right to self-organization, to form, join, or assist labor

organizations to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a) (3) of this title."

2. 136 N.L.R.B. 71.

1960 election, addressed the employees on Company time and on Company premises. Meetings thus held were attended on a voluntary basis and the speeches were anti-union in tenor. On April 22, 1960, the Union demanded that equal time be allowed its representatives on Company premises in order to present the Union's arguments for organization. By letter dated the following day the Company denied such opportunity to the Union. The Union was thereupon left to the methods available to it in order to carry its message; i.e., telephone contacts, off-property handbilling, television time, radio time, newspaper space, meetings at the Union Hall, home contacts, etc.

General Counsel for the Board conceded that the speeches made to the employees by the Company's representatives were noncoercive and protected under Section 8(c) of the Act.[3] It is further conceded that the no-solicitation rule enforced by the Company though broad, was privileged because of the nature of the Company's retail store business.[4] The thrust of the Board's decision is that the no-solicitation rule herein was unfairly applied in violation of Section 8(a) (1) of the Act, for the reason that a "glaring imbalance in opportunities for organizational communications" was created by the combination of the Company's valid rule, the Company's lawful speeches on its premises and the Company's denial of the Union request for equal time.

The determination of whether or not the within employer conduct produced an imbalance in opportunities for organizational communications is dependent upon the existence or non-existence of alternative methods of communication open to the Union. In National Labor Relations Board v. Babcock and Wilcox

Co. (together with National Labor Relations Board v. Seamprufe, Inc. and Ranco, Inc. v. National Labor Relations Board), 351 U.S. 105, 76 S.Ct. 679, 100 L.Ed. 975 the employer refused to permit distributions of union literature by non-employee organizers on company-owned parking lots. Other means of communications, such as mail, telephone, and contact at employee residences were open to the Union. However, the Board viewed the place of work as so much more effective for dissemination of information the employer was held guilty of an unfair labor practice. The Supreme Court in this case held that an employer could validly post his property against non-employee distribution of literature if reasonable efforts by the union through other available channels of communication would enable it to reach employees with its message. The Supreme Court refused to sustain the Labor Board because of the Board's failure to distinguish between obligations owed by an employer to its employees under the Act and those owed by the employer to non-employee organizers. The Court ruled that the employer's obligation to its employees is that of refraining from restriction of the employees' right to discuss self-organization among themselves unless such restriction reasonably serves production and discipline. On the other hand, access to the employer's property is not an obligation of the employer to non-employee organizers unless geographic and communications factors render the employees inaccessible, despite reasonable union efforts to reach them with a pro-union message. 351 U.S. p. 113, 76 S.Ct. p. 684. The usual methods of imparting organizational information were found to be present in this case.

In National Labor Relations Board v. F. W. Woolworth, 214 F.2d 78 (C.A.6)

---

3. Title 29 U.S.C. § 158—

"(c) The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force or promise of benefit."

4. May Department Stores Company, 59 N.L.R.B. 976.

1954, Judge Allen of this Court found the alternative methods of communication to be highly relevant in a case quite similar to the instant controversy. In National Labor Relations Board v. United Steel Workers of America, C. I. O. (Nutone, Inc.) 357 U.S. 357, 78 S. Ct. 1268, 2 L.Ed.2d 1383, 1958,[5] the Supreme Court reversed the Court of Appeals because the record in that case contained no evidence or findings with reference to, among other things, alternative channels of communications open to the union. The Nutone case dealt with an employer's enforcement of a no-solicitation, no-distribution rule while the employer contemporaneously distributed anti-union literature. The Board had found no discriminatory application of the employer's rule, but the Court of Appeals found such discriminatory application and directed that the Board's order be modified. The Supreme Court in reversing the Court of Appeals cited Babcock and Wilcox for the proposition that there must be a showing of true diminution in the ability of labor organizations to carry their messages to employees in order to invalidate a no-solicitation rule or to charge the employer with unfair application of a valid rule.

In the instant case, as members Leedom and Rodgers emphasize in separate dissents the Board made no findings as to the methods of communication open to the Union in view of such geographical considerations as the locations of the stores and the residence areas of the employees. The Board majority summarily treated all methods of communication other than a working-time speech to employees as "catch-as-catch can," ineffective methods. The reason given by the Board majority is that in order for home contacts, telephone calls, off-property handbilling and the like to be effective, the employees must be able to discuss the merits of unionization at the work-site. Since this opportunity for the employees was foreclosed by the employer's no-solicitation rule,[6] nothing, says the Board, can counter the effect of the employer's speech on company time except a union speech on company time. Thus a glaring imbalance in opportunities for organizational communications was found by the Board.

The Board, by its reasoning, has resurrected an obligation owed by the employer to non-employee organizers which the Supreme Court in Babcock and Wilcox put to rest. It has found an obligation owed to the Union by the employer to refrain from unnecessary restriction of employee discussion of self-organization. The Board has done so in the name of the employees' right to self-organization. How can it be viewed otherwise, when normal avenues of communication are called ineffective due to the concededly valid restriction on employee discussion, and it is the presence or absence of such avenues which governs union access to employer's premises? The Board majority acknowledges that Babcock and Wilcox puts the union to the use of methods of communication other than contact on the employer's premises if other means are available to the union. The majority apparently overlooks the point expressly made in Babcock and Wilcox that restrictions on employee discussion do not give a right to the Union to approach employees on company premises. What the Board has done in its decision is to use the concededly valid limitations on employee discussion in order to arbitrarily characterize normal contacts away from the job-site "catch-as-catch can," giving the union a right to approach the employees on company time and company premises in the event an employer speech, protected under Section 8(c) of the Act, is made. That a speech during working time on comp-

---

5. Together with National Labor Relations Board v. Avondale Mills.

6. Note, however, that the record discloses that employees at both stores were sub-

ject to contact by employee organizers in the employee cafeterias and employee lounge areas during lunch periods and rest periods.

premises may be preferable to use of contacts away from the work-site cannot in and of itself render the employer's conduct unfair under the Act. It was similarly the Board's view in Babcock and Wilcox that "the place of work was so much more effective a place for communication of information that it held the employer guilty of an unfair labor practice for refusing limited access to company property to union organizers."[7] The Supreme Court, along with the Babcock and Wilcox case, affirmed the decision of the Tenth Circuit Court of Appeals in National Labor Relations Board v. Seamprufe, Inc., 222 F.2d 858. The Court of Appeals in the latter case held that "absent a showing of non-accessibility amounting to a handicap to self-organization," non-employee solicitors have no right of access to company premises, inasmuch as they are "strangers to * * * the employees' guaranteed right of self-organization." P. 861 of 222 F.2d. There are no findings of non-accessibility by the Board in this case. There is no showing that the employees, away from the employer's premises, are removed or isolated from normal, usual communications. Indeed, there appears from the record every indication that they were accessible through alternative channels. The Board majority's reliance on Bonwit-Teller, Inc. v. N. L. R. B.[8] is misplaced as we regard this decision inconsistent with Nutone and Babcock and Wilcox. We consider our approach to be in accord with the Supreme Court's decision in Nutone, for neither the use of the magic word "imbalance" nor the characterization of alternative avenues of communication as "ineffective" by the use of a measure inapplicable to non-employee organizers can give the Union a right of access which the Supreme Court of the United States has refused to recognize and which it does not possess.

The Board's order is hereby set aside and enforcement is denied.

7. Babcock and Wilcox, supra, 351 U.S. pp. 107, 108, 76 S.Ct. p. 681.

8. 197 F.2d 640 (C.A.2) 1952, cert. denied 345 U.S. 905, 73 S.Ct. 644, 97 L.Ed. 1342.