MONTGOMERY WARD & CO., Incorporated, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 15738.

United States Court of Appeals
Sixth Circuit.

Jan. 8, 1965.

Narcisse A. Brown, Chicago, Ill., William B. Hanley, Chicago, Ill., Robert F. Groneman, Davis, Farley, Short & Roberts, Cincinnati, Ohio, on brief, for petitioner.

Duane R. Batista, N. L. R. B., Washington, D. C., Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Stephen B. Goldberg, Atty., N. L. R. B., Washington, D. C., on brief, for respondent.

Before CECIL, PHILLIPS and EDWARDS, Circuit Judges.

EDWARDS, Circuit Judge.

Petitioner, Montgomery Ward & Co., seeks review of an order of the NLRB finding certain unfair labor practices and ordering petitioner to desist therefrom. The Board in turn seeks enforcement of its order by cross-petition.

Although the site of this dispute is a department store operated by petitioner in Big Springs, Texas, jurisdiction is

established in this court by Section 10(e) and (f) of the National Labor Relations Act (29 U.S.C. §§ 151–160) since the petitioner "transacts business" in the states comprising the Sixth Circuit.

The background of this case is an attempt made by a union [1] to organize the Montgomery Ward employees in its Big Springs, Texas, store. When a number of the fifty employees in this store joined the union, Montgomery Ward reacted with considerable vigor.

Its supervisors called three meetings of all the employees (on paid time before or after work) in order to have them hear company speeches against the union. Supervisory personnel interrogated various employees about claimed violations of company rules prohibiting solicitation of employees for union membership during working time or on company property. The assistant manager twice drove around union meetings at the union hall checking parked cars to gain information on attendance.

As indicated above, the store had a broad "no-solicitation rule" which prevented solicitation of union membership on "company time" or in selling areas of the store or in areas of the store where it would interfere with the operation of the store.

At one of the meetings the store manager made an anti-union speech and then read the company "no-solicitation" rule to the grouped employees. Then he added that the rule also meant "no solicitation" during lunch time or during "coffee breaks" at the cafe across from the store. He added that employees violating the rule would be fired.

After this meeting the union business agent asked permission to address the employees on company time to respond to the statements made by the store manager. This request was denied.

After these events (and the discharge of the most vocal union adherent [2] among the employees), on April 23 a representation election was held. The union lost by a two to one margin. Thereafter unfair labor practice charges were filed which resulted in the instant proceeding.

After a full hearing, the Trial Examiner found:

"By promulgating an unlawful no-solicitation rule and by engaging in surveillance of union activity Respondent interfered with, restrained and coerced its employees in the exercise of the rights guaranteed by Section 7, thereby violating Section 8(a) (1)."

He recommended a cease and desist order and the posting of notices to advise the employees of the intention of petitioner not to repeat these violations.

The General Counsel filed 51 exceptions to the Trial Examiner's report. The Board, however, gave serious weight to only one of these; namely, his contention that petitioner violated Section 8(a) (1) by refusing, under the circumstances related above, to allow the union an opportunity to address the employees on company premises.

After adopting the Trial Examiner's findings and recommended order as to all other issues, the Board detailed its views on the basic issue now before this court: [3]

"The Respondent's utilization of company time and premises to propagandize against the Union must be viewed against the background of its unlawful circumscription of its employees' union activity. Respondent's representatives made antiunion speeches to assembled employees on company time and premises on January 16, January 24 and May 9. The Union, on January 23, requested permission to address Respondent's employees during working hours,

1. Local 826, International Union of Operating Engineers, AFL–CIO.

2. Testimony adduced before the Trial Examiner served to convince him that this discharge was based on threats made to nonunion employees and hence was not discriminatory. This discharge is not an issue in the proceedings before this court.

3. Montgomery Ward & Co., Inc., 145 N.L. R.B. No. 88 (1964).

but was refused. (Footnote omitted.)

\* \* \* \* \* \*

"The facts in the instant case are much stronger for finding a violation than in the May case [The May Department Stores Company v. N.L.R.B., 316 F.2d 797 (C.A. 6, 1963)]. For here Respondent did more than merely promulgate a broad, privileged, and hence lawful, no-solicitation rule. It went further and announced a rule which not only prohibited union discussion in selling areas of the store, but which also *unlawfully* forbade such activities in nonselling areas within the store regardless of whether the employees were on free time or not, and even went so far as to proscribe legitimate union activities off the store's premises during the store's business hours. In short, Respondent seriously impaired lawful solicitation activities at the natural site where employees are accessible for organizational efforts. Quite clearly, here more than in May, Respondent's broad and unlawful no-solicitation rule, coupled with its own use of Company time and property to impress its antiunion propaganda on employees, 'created a glaring imbalance in organizational communication' that justified the Union's request to address employees under the same circumstances as had Respondent. (Emphasis in original.)

"For the foregoing reasons, we find that Respondent, by denying the Union's request, violated Section 8 (a) (1) of the Act. It follows, and we also find, that such conduct of Respondent also interfered with the election of May 10, and we shall therefore set that election aside and direct a new election.

"The Remedy

"Our finding of a violation of Section 8(a) (1) from Respondent's refusal to allow the Union to address the employees has been predicated on the Respondent's maintenance of an unlawful no-solicitation rule. However, in view of the nature of Respondent's business and the fact that Respondent may adopt a broad, yet privileged, rule, we shall direct Respondent, while enforcing either such a privileged rule or an unlawful one, not to make antiunion speeches to employees during company time on its premises without honoring a union's request similarly to address the employees." 145 N.L.R.B. No. 88, at 4–6 (1964).

In the issue thus described, the property rights and the constitutional and statutory free speech rights of employers come into conflict with the national purpose of making secure employees' rights to organize. Accommodating both sets of rights has puzzled Congress. Its current formulations as set forth in the N.L.R.A. are as follows:

"RIGHTS OF EMPLOYEES

"Sec. 7. Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8(a) (3).

"UNFAIR LABOR PRACTICES

"Sec. 8(a) It shall be an unfair labor practice for an employer—

"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7;

\* \* \*

"(c) The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written,

printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this Act, if such expression contains no threat of reprisal or force or promise of benefit."

Thus Congress has recognized employer rights of free speech, but has sought to limit them when they verge upon the use of employer economic power to coerce employees not to organize.

The Supreme Court has not found the resolution of these conflicting interests simple—either before or after the adoption of Section 8(a) (1), (c). N.L.R.B. v. United Steelworkers of America, 357 U.S. 357, 78 S.Ct. 1268, 2 L.Ed.2d 1383 (1958); N.L.R.B. v. Babcock & Wilcox Co., 351 U.S. 105, 76 S.Ct. 679, 100 L.Ed. 975 (1956); Republic Aviation Corp. v. N.L.R.B., 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945); Thomas v. Collins, 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430 (1945).

Each of these cases bears upon our present problem, but does not solve it.

In Thomas v. Collins, supra, the earliest of these cases, we find these paragraphs:

"Accordingly, decision here has recognized that employers' attempts to persuade to action with respect to joining or not joining unions are within the First Amendment's guaranty. National Labor Relations Board v. Virginia Electric & Power Co., 314 U.S. 469, 62 S.Ct. 344, 86 L.Ed. 348. Decisions of other courts have done likewise. When to this persuasion other thing are added which bring about coercion, or give it that character, the limit of the right has been passed. Cf. National Labor Relations Board of Virginia Electric & Power Co., supra. But short of that limit the employer's freedom cannot be impaired." (Footnotes omitted.) Thomas v. Collins, supra 323 U.S. at 537–538, 65 S.Ct. at 326 (Opinion of Rutledge, J.)

A concurring opinion stated:

"No one may be required to obtain a license in order to speak. But once he uses the economic power which he has over other men and their jobs to influence their action, he is doing more than exercising the freedom of speech protected by the First Amendment. That is true whether he be an employer or an employee. But as long as he does no more than speak he has the same unfettered right, no matter what side of an issue he espouses." Thomas v. Collins, supra 323 U.S. at 543–544, 65 S.Ct. at 329. (Douglas, J., concurring.)

In Republic Aviation the Supreme Court approved NLRB language making a distinction between a company "no-solicitation" rule applicable to "working time" and one applicable to employees "outside of working hours, although on company property." Prohibition of solicitation under the latter circumstances in a manufacturing plant was held to be an unfair labor practice. Republic Aviation Corp. v. Labor Board, supra 324 U.S. at 803–805, 65 S.Ct. at 988.

In Babcock & Wilcox the impact of Republic Aviation was restricted by holding that where there were reasonably available means for the union to get its message to employees, a company rule prohibiting nonemployee distribution of literature on company parking lots was not an unfair labor practice.

Mr. Justice Frankfurter wrote the opinion for the Court in the two cases dealt with in N.L.R.B. v. United Steelworkers of America, supra. In it he held that no unfair labor practices had been established and no union requests for waiver of the no-solicitation rules had been made. Under these facts he held that company-called employee meetings on company property and time where antiunion speeches were made by company executives did not of themselves constitute unfair labor practices.

In the Avondale case (one of the two cases decided in the same opinion) Chief

Justice Warren dissented in an opinion, joined by Justices Black and Douglas. The differences between Frankfurter and Warren appeared to lie primarily in differing construction of the factual background of the "no-solicitation" rule in Avondale. For our purposes it is interesting to compare the crucial views of the applicable law as set forth first by Justice Frankfurter and then by Chief Justice Warren in this case.

Mr. Justice Frankfurter said:

"We are asked to rule that the coincidence of these circumstances necessarily violates the Act, regardless of the way in which the particular controversy arose or whether the employer's conduct to any considerable degree created an imbalance in the opportunities for organizational communication.

\*　　\*　　\*　　\*　　\*

"We do not at all imply that the enforcement of a valid no-solicitation rule by an employer who is at the same time engaging in anti-union solicitation may not constitute an unfair labor practice. All we hold is that there must be some basis, in the actualities of industrial relations, for such a finding." N.L.R.B. v. United Steelworkers of America, supra 357 U.S. at 362, 364, 78 S.Ct. at 1272.

Chief Justice Warren said:

"The validity of both practices— the enforcement of the no-solicitation rule and the coercive antiunion solicitation—comes into question, for they are not separable. Under one set of circumstances the no-solicitation rule may be valid. However, the determination as to whether an employer's antiunion activities are an unfair labor practice depends on the context in which those activities occur, and no-solicitation rules are to be subjected to the same kind of scrutiny. Employees during working hours are the classic captive audience. At the very moment the employees in this case were un-

der the greatest degree of control by their employer, they were forced to listen to denunciations of the union coupled with clear references to the personal disasters that would ensue if the union succeeded or if the particular employee continued to solicit for the union. These threats were themselves held to be unfair labor practices by the Board, and that holding was enforced by the Court of Appeals and is not in issue here. During this same working time the unionized employees, who under Section 7 of the National Labor Relations Act have a right to engage in concerted activity, were unable, due to their employer's own rule, to try to overcome the effect of his activities even though those activities were in violation of Section 8(a)(1) of the Act. It is not necessary to suggest that in all circumstances a union must have the same facilities and opportunity to solicit employees as the employer has in opposing the union. However, the plant premises and working time are such decisive factors during a labor dispute that when an employer denies them to the union and at the same time pursues his own program of coercion on the premises and during working hours, this denial is by itself an interference with the rights guaranteed in Section 7 of the Act and hence contrary to Section 8(a) (1)." N.L.R.B. v. United Steelworkers of America, supra 357 U.S. at 368, 369, 78 S.Ct. at 1274 (Warren, C. J., dissenting)

There is no question in our instant case that the "no-solicitation" rule as applied was illegal. The NLRB has, of course, extended to department stores an exception to the general rule laid down in Republic Aviation. In view of the public nature of such a business, the NLRB has upheld company "no-solicitation" rules applicable not just to working time but also to all company property in the public areas of the store concerned. See May Department Stores,

59 N.L.R.B. 976; enforced, National Labor Relations Board v. May Dept. Stores, 154 F.2d 533 (C.A. 8, 1946), cert. denied, 329 U.S. 725, 67 S.Ct. 72, 91 L.Ed. 627 (1946).

■ Here, however, the company employed its advantage under this exception to ban all union solicitation on company property. The company then proceeded to hold an employee meeting in the area of the store protected from union solicitation for public convenience in order to solicit its employees not to join the union and to threaten them with wholly illegal discharge if they solicited union membership on their own time away from company property. Such conduct the NLRB regarded as creating "an imbalance in organizational communication." N.L.R.B. v. United Steelworkers of America, supra, 357 U.S. at 362, 78 S.Ct. at 1271.

Petitioner apparently chose this circuit for its appeal because of our court's decision in May Department Stores Company v. N.L.R.B., 316 F.2d 797 (C.A. 6, 1963), which they read as inconsistent with the Second Circuit's view as set forth in Bonwit Teller, Inc. v. N.L.R.B., 197 F.2d 640 (C.A. 2, 1952), cert. denied, 345 U.S. 905, 73 S.Ct. 644, 97 L.Ed. 1342 (1953).

In the May opinion we find this language:

"General Counsel for the Board conceded that the speeches made to the employees by the Company's representatives were noncoercive and protected under Section 8(c) of the Act. It is further conceded that the no-solicitation rule enforced by the Company though broad, was privileged because of the nature of the Company's retail store business." May Department Stores Company v. N.L.R.B., supra 316 F.2d at 799 (Footnotes omitted.)

In our instant case we find no such conceded facts as those quoted above. This court's denial of enforcement of the NLRB order in May is no precedent for denial of enforcement of the order here presented, as herein modified.[4]

■ We turn next to consideration of the NLRB order which itself offers additional problems. Generally, where unfair labor practice charges have been sustained, the courts rely upon the expertise of the NLRB to fashion remedies for the violations found. International Assn. of Mach., Tool & Die Makers Lodge No. 35 v. National Labor Relations Board, 311 U.S. 72, 82, 61 S.Ct. 83, 85 L.Ed. 50 (1940); N.L.R.B. v. Truck Drivers Union, 353 U.S. 87, 96, 77 S.Ct. 643, 1 L.Ed.2d 676 (1957); N.L.R.B. v. Erie Resistor Corp., 373 U.S. 221, 236, 83 S.Ct. 1139, 10 L.Ed.2d 308 (1963). A mere cease and desist order (such as contemplated by the Trial Examiner) may serve only to represent formal acknowledgment of the law while the offender maintains full possession of the fruits of its violation.

■ Under the factual situation here where acknowledged unfair labor practices and coercive use of company free speech rights have resulted in the NLRB setting aside the results of a representation election, we find no occasion to disturb the remedy proposed of requiring that the union be given opportunity to address the employees on company property if the company again sees fit to employ this measure.

Montgomery Ward points out, however, that the order as drafted is not necessarily related to the background of illegal coercion which is cited to justify it. As drafted the order might be read to apply in perpetuity and to all of Montgomery Ward establishments whether or not such violations had occurred therein.

We find no evidence presented herein of any national pattern of unfair labor practices and the brief filed on behalf of the Board acknowledges that its order should be read as applicable only to the Big Springs, Texas, store. The order should so provide.

4. Similar facts distinguish N. L. R. B. v. F. W. Woolworth Co., 214 F.2d 78 (C.A.6, 1954).

Further, since we read this record as containing justification for the Board's remedy in the violations preceding the past election (which violations are proscribed as to the future), we see no justification for the "equal time" feature of this order to be applicable beyond the date of the forthcoming employee representation election.

Enforcement of the Board's order, modified in accordance with this opinion, is granted.