NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

LOCAL 85, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Respondent.

No. 25983.

United States Court of Appeals, Ninth Circuit.

Jan. 24, 1972.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Elliott Moore, Allen H. Feldman, Washington, D.C., and Roy O. Hoffman, Director, NLRB, San Francisco, Cal., for petitioner.

Duane B. Beeson, of Brundage, Neyhart, Grodin & Beeson, Littler, Mendelson & Fastiff, San Francisco, Cal., for respondent.

Before MERRILL, KOELSCH and HUFSTEDLER, Circuit Judges.

KOELSCH, Circuit Judge:

Proceeding to enforce an order of the National Labor Relations Board.[1]

Local 85 is the collective bargaining agent for truck drivers in San Francisco and San Mateo Counties, in the State of California. The dispute arose from the fact that two trucking firms, Victory Transportation Service, Inc. (Victory) and West Transportation, Incorporated (West), did not employ members of Local 85 when operating in San Francisco County. Victory and West are based, respectively, in Santa Clara and Contra Costa Counties, and have collective bargaining agreements covering their employees with unions other than Local 85.

Victory engaged in regular hauling for the customers of a South San Francisco liquor dealer, E. Martinoni, Incorporated (Martinoni). When making pickups at the Martinoni warehouse, Victory drivers loaded their own trucks, occasionally with the assistance of Martinoni's warehouse employees, who would deposit loaded pallets inside the trucks. On several of these occasions, representatives of Local 85 appeared at the scene and threatened Martinoni with picketing and shutdowns unless its employees stopped assisting the Victory drivers who, the union argued, were required to hire Local 85 helpers for such work.

During one incident, a union representative physically assaulted Martinoni's warehouse supervisor.

West hauled construction materials from a South San Francisco producer, Grassi-American Company (Grassi), to various building sites in the San Francisco area. Local 85 representatives—contending that West had violated its work rules by using drivers who were not Local 85 members for hauls originating and terminating within the union's "jurisdiction"—went to two building sites and threatened, respectively, employees of Hellman Crane and Rigging Company (Hellman) and of Berman-Hellman Incorporated (Berman), with picketing of the job sites because of the union's dispute with West. Representatives of the local also appeared at the Grassi plant and threatened to picket the plant and stop Grassi's employees and suppliers from entering.

■ The Board found that Local 85 was guilty of an unfair labor practice as a result of the assault on the Martinoni supervisor, in violation of section 8(b) (1) (A) of the Act [29 U.S.C. § 158(b) (1) (A)], and that the union had engaged in illegal secondary activity by its threats of picketing directed at Martinoni, Berman, Hellman, and Grassi, and by its inducement of employees of Martinoni and Berman to withhold their services in the course of their employment, in violation of section 8(b) (4) (B) [29 U.S.C. § 158(b) (4) (B)].

(1) Local 85 urges that the proceeding be dismissed because prematurely brought; the contention is that the Board sought judicial enforcement of the order before first giving Local 85 an opportunity to voluntarily comply with its provisions. Local 85 cites no authority but simply makes general reference to "the Board's own Statement of Procedure and . . . the Administrative Procedure Act. . . ."

---

1. The Board's decision is reported at 180 N.L.R.B. No. 109.

The Act contains no language which even suggests such a precondition and, if Local 85 means by its reference to the Board's "Procedure" the latter's own regulations, the only one at all relevant appears to be 29 C.F.R. 101.13(a); the pertinent language is that "after the order is issued . . . the director . . . communicates with the respondent for the purpose of obtaining compliance. Conferences may be held to arrange the details necessary for compliance with the terms of the order." Subsection (b), however, indicates that subsection (a) imposes no mandatory requirements for it declares that ". . . in some cases it is deemed desirable, notwithstanding compliance, to implement the order with an enforcing decree. . . ." See N. L.R.B. v. Raytheon Co., 398 U.S. 25, 27, 90 S.Ct. 1547, 26 L.Ed.2d 21 (1970) upholding the Board's broad discretion. And 29 C.F.R. 101.14 reiterates the same theme: "If the respondent does not comply with the Board's order, or the Board deems it desirable to implement the order with a court decree, the Board may petition the appropriate Federal Court for enforcement."

The contention lacks merit and is rejected.[2]

(2) Local 85 challenges the Board's findings only with respect to the alleged secondary activites involving Martinoni. Specifically, it challenges the finding that the local's dispute was with Victory, arguing instead that it had a primary labor dispute with Martinoni, in that Martinoni's employees had "trespassed" into the local's jurisdiction by assisting the Victory drivers. In the alternative, the local argues that, even if the primary dispute was with Victory, no illegal secondary activity was established.

There was evidence that Martinoni had no collective bargaining relations with Local 85, employed no drivers, and took no part in the selection of carriers to haul its merchandise. On one occasion, when in response to the local's threats of picketing, the Martinoni supervisor instructed his men to stop loading the Victory truck, it was Victory who hired and paid a Local 85 helper to assist its driver. Statements made by the local's representatives, both to Victory drivers and to Martinoni employees, indicated that Victory was the party to whom the local looked when it demanded the hiring of helpers. While it is true that there was evidence to the effect that Local 85 made no demands directly upon Victory's management, we cannot say that the Board's factual conclusion that Martinoni was a neutral in the dispute is unsupported by substantial evidence.

Threats, picketing and other economic pressure directed at a neutral employer are illegal secondary activities when, in the language of 29 U.S.C. § 158(b) (4) (B), an object is "forcing or requiring any person * * * to cease doing business with any other person . . . ." Local 85 construes this quoted portion of the statute to require a total cessation of business relations between the person against whom the pressure is exerted and the person with whom the labor disputes exist. The law is to the contrary. In N. L. R. B. v. Local 825, Operating Engineers, 400 U.S. 297, 91 S.Ct. 402, 27 L.Ed.2d 398 (1971) the Supreme Court held that requiring a total cessation of business relations was "too narrow" a reading of section 8(b) (4) (B). Under that decision, if the foreseeable result of secondary activity will be more than a "slight" disruption of business relations, the "cease doing business" re-

---

2. There is nothing before us to indicate what the Board did, or did not do, with reference to communication with respondent, arranging conferences, etc. But since the Board does not urge the lack of a showing, we have considered the point.

quirement is met. On the facts of this case, the probability existed that Martinoni would be completely shut down—indeed, this was the local's threat—if its employees continued to assist the Victory drivers, or that its delivery schedules would be substantially disrupted if its employees could not assist in the loading. Faced with such alternatives, Martinoni would foreseeably be forced either to terminate its relations with Victory, or to insist that Victory hire Local 85 helpers as a condition of continued relations. The "cease doing business" requirement is therefore met.

■ (3) The Board's order restrains the local from committing the described unfair labor practices not only against the named employers, but also against "any other person engaged in interstate commerce." Local 85 argues that the order is overbroad and should be confined to the named employers. The Board justified the scope of its order on the basis of the union's "policies which go much beyond the employers involved here." This observation suggests that the Board was persuaded that Local 85 would commit similar violations in the future unless restrained by threat of sanctions. We cannot say that the Board was wrong in its appraisal or that such an order is improper.

Only recently this court enforced a similarly broad order against this same union. In the opinion, we noted that "a propensity [of Local 85] for secondary boycotts often accompanied by violence is well documented by the record and by incidents of which the Board and a court may properly take judicial notice." N. L. R. B. v. Teamsters, Local 85, 448 F.2d 789 (9th Cir. 1971). In view of Local 85's demonstrated "proclivity for unlawful action," [N. L. R. B. v. Int. Longshoremen's Union, Local 10, 283 F. 2d 558, 568 (9th Cir. 1960)], the broad order entered by the Board in this case is not improper.

The Order will be enforced.