458 F.2d 222
 79 L.R.R.M. (BNA) 3057, 67 Lab.Cas. P 12,558
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
BROTHERHOOD OF TEAMSTERS AND AUTO TRUCK DRIVERS LOCAL NO.
85, INTERNATIONAL BROTHERHOOD OF TEAMSTERS,
CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF
AMERICA, Respondent.
 No. 25960.
 United States Court of Appeals,
Ninth Circuit.
 March 30, 1972.
 
 Michael S. Winer (argued), Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Warren M. Davison, Deputy Asst. Gen. Counsel, Washington, D. C., Roy O. Hoffman, San Francisco, Cal., for petitioner.
 Duane B. Beeson (argued), of Brundage, Neyhart, Grodin & Beeson, San Francisco, Cal., for respondent.
 Before HAMLEY and KOELSCH, Circuit Judges, and SMITH,* District Judge.
 KOELSCH, Circuit Judge:
 
 
 1
 Petition for enforcement of an order of the National Labor Relations Board. In its decision and order, reported at 175 N.L.R.B. 112, the Board found the Brotherhood of Teamsters and Auto Truck Drivers Local No. 85 (Union) unlawfully discriminated against member Jack Hall, in violation of sections 8(b) (2) and 8(b) (1) (A) of the National Labor Relations Act, as amended [29 U.S.C. Sec. 158(b) (2), (b) (1) (A)].
 
 
 2
 Hall, a truck driver, has been a member of the Union since 1951. During the period under consideration he was employed by the Pacific Motor Trucking Company (Company) where, because of his considerable seniority among the company's drivers, he was assured of steady work and frequent overtime.
 
 
 3
 Prior to the events involved in this case, Hall had regularly paid his membership dues and maintained good standing in the Union. During the last three months of 1966, however, Hall failed to pay his dues. These were payable quarterly at the rate of $9.00 per month. Under the terms of the Union's constitution, a member who became three months in arrears in the payment of dues was automatically suspended from membership. In January, 1967, Union notified Hall in writing of his suspension and advised him to appear before the Union's Executive Board at its regular monthly meeting to request reinstatement. Hall did not appear at this meeting, but a week later he went to the Union's business agent and tendered $54 to cover both his back dues and the dues for the first three months of 1967. The business agent refused the tender, referring Hall to Tim Richardson, the Union business manager. Richardson informed Hall that because his membership was in suspension, he would be required to pay a reinstatement fee of $100, as provided by the Union bylaws, plus $27 back dues, and $9 dues for the current month. Richardson accepted the $54 as a partial payment of the reinstatement fee, and told Hall that he would be given a "couple of months" to pay the balance of his obligation. The business manager advised Hall to attend the February 27 Executive Board meeting, at which time he could request a waiver of the reinstatement fee; he also warned Hall that unless he paid all the fees and dues by the end of March, the Union would have him discharged from his employment, pursuant to the Union Security Clause of the Collective Bargaining Agreement between Union and Company.
 
 
 4
 Hall failed to appear at the February meeting, but at that time the Union took no action. On April 7, he made another payment to the Union in the sum of $30; this too was credited against his reinstatement fee. On June 7, he paid $52. The Union applied $16 of this sum to his reinstatement fee and $27 to his 1966 back dues, paying each in full; the remaining $9 was used to pay Hall's dues for the current month. That same day, a Union representative orally demanded that the Company "remove" Hall from its seniority list for dues delinquency.[1] The Company refused, on the ground that the collective bargaining agreement required such demands to be written. Two days later, the Union sent a letter to the Company demanding that Hall be placed "at the bottom" of the seniority list.[2] This demand was also rejected.
 
 
 5
 On June 15, the Union membership voted to reinstate Hall, retroactive to June 7, the date his reinstatement fee and 1966 back dues had been paid. Nevertheless, on June 26, the Executive Board told Hall that his reinstatement was conditioned upon his loss of seniority. On June 28, the Union wrote to the Company requesting that Hall be "removed" from the seniority list (i.e., discharged) because he "had gone suspended" from membership. The letter also revealed, however, that Hall had been reinstated prior to the request. The Company, upon receiving the letter, called Hall into its office. Hall showed a current membership card and a receipt covering his dues for the ensuing quarter. The Company thereupon refused to discharge him. Union representatives called the Company on July 3 and threatened to picket unless Hall was immediately discharged. The Company complied and this proceeding followed.
 
 
 6
 The Board found that the Union had unlawfully caused the Company to discriminate against Hall by its attempt to reduce Hall's seniority and by causing the Company to discharge Hall after reinstatement.
 
 
 7
 It is not disputed that, pursuant to a union security agreement, a union may effect the discharge of an employee who has failed to obtain or maintain union membership. 29 U.S.C. Secs. 158(a) (3) and 158(b) (2) expressly sanction such agreements. Decisions of the Board and of this court make it clear that an employee may not frustrate the union's right to enforce a union security agreement by tendering his membership fees after the union has requested that the employer discharge him for failure to join the union. General Motors Corp., 134 N.L.R.B. 1107 (1961); N.L.R.B. v. Pacific Transport Lines, Inc., 290 F.2d 14 (9th Cir.1961).
 
 
 8
 A union may, however, waive or be estopped from asserting its right to enforce a union security agreement. N.L.R.B. v. Technicolor Motion Pictures Corp., 248 F.2d 348, 356 (9th Cir.1957). In N.L.R.B. v. International Woodworkers Local 13-433, 264 F.2d 649 (9th Cir.1959), cert. denied, 361 U.S. 816, 80 S.Ct. 56, 1 L.Ed.2d 63, we held that where a union had accepted a tender of dues after it had requested an employee's discharge, the union had waived the asserted delinquency as a ground for discharge under the union security agreement. See also, F. J. Burns Draying, Inc., 129 N.L.R.B. 252 (1960).[3]
 
 
 9
 The Union argues that Hall's reinstatement was to be prospective only, and that it did not interfere with the Union's right to demand Hall's discharge for his past dues delinquency. It points out that in International Woodworkers, supra, the employee made full payment of his delinquent dues, whereas in this case, Hall had neither paid nor tendered his union dues for January through May of 1967. However, the distinction is not controlling.
 
 
 10
 The collective bargaining agreement placed strict limitations upon the discharge of employees under the union security agreement, and upon the reduction in employees' seniority. An employee could be discharged only upon a written demand by the Union. Nor could the employer reduce an employee's seniority unless the employee had been discharged, had quit, or had been laid off for over two years. The Union's demand on June 7, that Company discharge Hall, being oral, was invalid and was rightly refused on that ground. The Union's demand on June 9 that the Company strip Hall of his seniority was a nullity because Hall had not been previously discharged. And, for the reasons stated below, the Union's June 28 demand for Hall's discharge was void, because at the time it was made Hall was a member in good standing, the Union having reinstated him.
 
 
 11
 The Board concluded that the Union's acts constituted a waiver of the right to enforce the union security clause against Hall. The Union argues, in substance, that although Hall had been reinstated and had paid his current dues, he nevertheless remained subject to discharge because his dues for the first five months of the year remained delinquent and unpaid. We disagree.
 
 
 12
 True, the Union could have required the Company to discharge Hall while his membership was suspended; but, by its acts, the Union terminated Hall's suspension before making a valid demand on the Company. In April and again in June, the Union accepted Hall's reinstatement payments; it credited a portion of the June payment to that month's dues obligation, even though the Union's own records showed that Hall had made no dues payments for the previous five months. In addition, the Union membership vote to reinstate Hall retroactive to June 7, was unconditional and without reservation. Moreover, the Union issued Hall a current membership card, evidencing his good standing as a member. And yet further, the Union credited Hall's dues payment on June 30 to prospective dues. Both Hall and the Company had a right to rely upon these official acts of the Union in affirming Hall's membership standing. F. J. Burns Draying, Inc., supra. These acts are wholly inconsistent with the Union's argument; they provide substantial support for the Board's finding that the Union waived its right to effect Hall's discharge.
 
 
 13
 The Board's order restrains the Union from "[c]ausing or attempting to cause Pacific Motor Trucking Company, or any other employer, to discriminate against Jack Hall or any other employee . . . or causing or attempting to cause the Company, or any other employer to discriminate against employees in any other manner with regard to their hire or tenure of employment. . . ." (Emphasis added). As worded, the order is overbroad. The Board's authority to restrain unfair labor practices is "not an authority to restrain generally all other unlawful practices which it has neither found to have been pursued nor persuasively to be related to the proven unlawful conduct." N.L.R.B. v. Express Pub. Co., 312 U.S. 426, 433, 61 S.Ct. 693, 698, 85 L.Ed. 930 (1941); Communications Workers v. N.L.R.B., 362 U.S. 479, 80 S.Ct. 838, 4 L.Ed.2d 896 (1960). The Board's findings in this case do not show any related unlawful activity directed at other employers or other employees, or that the Union sought to discriminate against employees in any manner other than the tactic used in this case. We recently approved a broad order against this same local in N.L.R.B. v. Teamsters, Local 85, 454 F.2d 875 (1972) because of the local's repeated secondary boycott violations, but those activities are not sufficiently related to the conduct involved in this case to justify a broad order here.
 
 
 14
 The italicized portions of the order quoted above will be stricken, and the order, as so modified, will be enforced.
 
 
 
 *
 Honorable Russell E. Smith, United States District Judge, Missoula, Montana, sitting by designation
 
 
 [1]
 The Collective Bargaining Agreement required the Employer to post a list of all employees arranged in the order of their seniority. A request that an employee's name be "removed" from the seniority list was tantamount to a demand for discharge
 
 
 [2]
 This was, in effect, merely a demand that the Company reduce Hall's seniority rather than discharge him, since Hall's name would remain on the seniority list
 
 
 [3]
 In F.J. Burns Draying, Inc. the Board determined that where a union accepted a suspended member's reinstatement fees and erroneously informed him in writing that the membership had voted to reinstate him (when in fact, the membership had voted not to accept his reinstatement), the union could not subsequently demand his discharge on the ground that the notice had been sent through error. The Board concluded, "Employees, required as a condition of employment to maintain membership in a union, are entitled to rely upon official statements and letters affirming their membership status for purposes of retaining employment." 129 N.L.R.B. at 256