**FLORIDA STEEL CORPORATION,**
Petitioner, Cross-Respondent,

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**
**Cross-Petitioner.**

No. 79–2493.

United States Court of Appeals,
Fifth Circuit.

June 25, 1980.

Hamilton & Bowden, Michael G. Tanner, Charles F. Henley, Jr., Jacksonville, Fla., for petitioner, cross-respondent.

Carol A. DeDeo, N. L. R. B., Washington, D. C., Jolane A. Findley, McLean, Va., Norton J. Come, Acting Gen. Counsel, John E. Higgins, Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., for respondent, cross-petitioner.

Jeffrey L. Gibbs, Washington, D. C., for United Steelworkers of America, AFL–CIO.

Reed Johnston, Director, Region 11, N. L. R. B., Winston-Salem, N. C., for other interested party.

Before RUBIN and POLITZ, Circuit Judges, and POINTER\*, District Judge.

POINTER, District Judge:

This appeal involves an attack, upon petition for review filed by Florida Steel Corporation, on the scope of remedial action ordered by the National Labor Relations Board. The Board, joined by the United Steelworkers of America, AFL–CIO, seeks enforcement of the Decision and Order reported at 242 NLRB No. 195 (June 20, 1979). Concluding the order to be impermissibly broad under the circumstances, we remand to the Board for appropriate modification of its Order.

This latest episode in the stormy relationship between Florida Steel and the Steelworkers arises from prior proceedings before the Board, which resulted in the company's being ordered to reinstate several employees previously discharged from its plant at Croft, North Carolina. See *Florida Steel Corporation*, 214 NLRB 246 (1974), *enforced in applicable part, sub nom. Florida Steel Corp. v. N. L. R. B.*, 551 F.2d 306 (4th Cir. 1977) (table). The Steelworkers union, previously certified as bargaining representative at the Croft plant,[1] thereafter requested information concerning the employees to be reinstated and those to be displaced by the reinstatements. The recalcitrance of Florida Steel in providing this information—indeed, it apparently never provided all of the information requested—

prompted the union to file with the Board the instant charge of an unfair labor practice contrary to 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (5). The Board, agreeing with the findings of the administrative law judge, found Florida Steel to have committed the violation alleged; and this decision is not seriously challenged in the present appeal.[2]

The order recommended by the administrative law judge would have required Florida Steel to provide promptly on request to the Steelworkers all information relevant to performance of its obligations as a bargaining representative and, additionally, to give notice to that effect in various forms to employees at the plants then represented by the Steelworkers.[3] Acknowledging that it was granting "extraordinary remedies," the Board expanded upon the affirmative action portion of the proposed order. First, it required that the notice, in a broader form, be mailed, posted, and read so as to reach employees at all Florida Steel plants, without regard to whether unionized or even the subject of organizational efforts. Second, it directed that the Steelworkers be permitted to speak to the employees—by a thirty minute speech on working time at any plant where, within two years from the order, an election involving the Steelworkers should be scheduled by the Board, and by being allowed to be present and have equal time for reply at any plant where, within the two years, any company official should address a group of employees on the question of union representation.[4] On this appeal

---

\* District Judge of the Northern District of Alabama, sitting by designation.

1. The Steelworkers union is also certified as representative for employees at the Indiantown, Florida, plant of Florida Steel. There is no certified representative at other plants of the company.

2. During oral argument of the appeal, the company in essence abandoned its attack upon the finding of a violation of the Act, as well it should in the light of the applicable standard of review. See, *e. g., Great Atlantic and Pacific Tea Co. v. N. L. R. B.*, 354 F.2d 707 (5th Cir. 1966); 29 U.S.C. § 160(f).

3. A prescribed notice was to be mailed to all employees in bargaining units represented by the Steelworkers and to be posted on bulletin boards and read to all employees at the plants (Croft and Indiantown) at which the union was a bargaining representative. The notice was also to be included in "appropriate company publications."

4. One of the three members of the Board panel dissented from the provisions affording the union with access to the employees on company time.

Florida Steel vigorously challenges the affirmative action ordered by the Board as inappropriate vis-a-vis the relatively innocuous violation at the Croft plant involved in the instant charge; the Board and the Steelworkers, just as strenuously, contend that the order is necessary in view of the company's intransigent and pervasive disregard of the policies of the National Labor Relations Act.[5]

The Board is authorized, upon finding a violation, to order the party "to cease and desist from [the] unfair labor practice, and to take such affirmative action . . . as will effectuate the policies of [the Act]." 29 U.S.C. § 160(c). The Board has broad latitude in ascertaining, from its fund of knowledge and expertise, appropriate remedial measures; and its decision must be given "special respect", *N. L. R. B. v. Gissel Packing Co.*, 395 U.S. 575, 609, 612 n. 32, 89 S.Ct. 1918, 1937, 1939 n. 32, 23 L.Ed.2d 547 (1969), and "considerable weight." *Virginia Electric & Power Co. v. N. L. R. B.*, 319 U.S. 533, 540, 63 S.Ct. 1214, 1218, 87 L.Ed. 1568 (1943). The Board's order will not be disturbed by the court unless it is a "patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act." *Ibid.*

Under this perspective, we conclude that the Board acted within permissible limits in ordering Florida Steel to give notice—by letter, by posting, and by reading—that it would not interfere with the exercise by employees of their rights under Section 7 of the Act and would provide the Steelworkers with information relevant to performance of its responsibilities as a bargaining representative. Like remedies were approved by this court a decade ago in *J. P. Stevens & Co. v. N. L. R. B.*, 417 F.2d 533 (5th Cir. 1969); and, while each case must be viewed on its own circumstances, the facts of the case *sub judice* clearly support this judgment of the Board. We likewise affirm the Board's decision, in part resting upon the company's having earlier used its own unfair labor practice at one plant as a part of its campaign against unionization elsewhere in the corporate structure, that the notice should be provided to employees at all of Florida Steel's plants. *Cf. J. P. Stevens & Co. v. N. L. R. B.*, 612 F.2d 881 (4th Cir. 1980), *enf'g*, 240 NLRB No. 35 (1979).

Judicial review of the Board's orders is, while limited, nevertheless not illusory. As stated in *Consolidated Edison Co. v. N. L. R. B.*, 305 U.S. 197, 235–36, 59 S.Ct. 206, 219–20, 83 L.Ed. 126 (1938):

"[T]his authority to order affirmative action does not go so far as to confer a punitive jurisdiction enabling the Board to inflict upon the employer any penalty it may choose because he is engaged in unfair labor practices, even though the Board be of the opinion that the policies of the Act might be effectuated by such an order. The power to command affirmative action is remedial, not punitive, and is to be exercised in aid of the Board's authority to restrain violations and as a means of removing or avoiding the consequences of violation where those consequences are of a kind to thwart the purposes of the Act."

The Board has great discretion to determine what curative measures are needed with respect to a particular violation, consistent with the policies of the Act, and, in so doing, may properly consider past conduct of the parties which may affect the scope of an effective remedy. The essence of the Board's order must, however, if it is to be remedial, be based upon the conduct found by the Board to violate the Act in the current proceedings. It must be remembered that the Board is not empowered to monitor on a continuing basis the activities

---

5. By one count, Florida Steel had been found guilty of an unfair labor practice by the Board on seventeen separate occasions since 1974, with enforcement ordered by the court in ten of the twelve cases reviewed on appeal. The company has countered by emphasizing the disputatious character of the Steelworkers' organizational and representational activities at the various plants, leading to the filing of dozens of charges and to the characterization by this court of the controversy as one reminiscent of the feud between the Hatfields and the McCoys. See *N. L. R. B. v. Florida Steel Corp.*, 586 F.2d 436, 446 (5th Cir. 1978.)

of a company or union found to have committed one or more unfair labor practices or to impose on a periodic basis additional requirements because of a past violation.

■ Having found Florida Steel guilty of an unfair labor practice by failing to provide the Steelworkers with information needed to perform its role as bargaining representative at the Croft plant, the Board has here, *inter alia*, required the company to grant the Steelworkers access to employees not only at the Croft plant, and at the other plant (Indiantown) where it is a bargaining representative, but also at the other plants of the company where it is not a bargaining representative and where organizational efforts may not even be in progress. The provisions for access at Croft and at Indiantown can be justified, albeit tenuously, as a means for deterring any repetition of the conduct before the Board and for preventing other efforts by the company to impair the effectiveness of the union as a bargaining representative. The Board's decision with respect thereto, while admittedly "extraordinary," is therefore to be upheld.

In requiring this access to be provided at plants where the Steelworkers union is not a bargaining representative, however, the Board's order cannot be viewed as remedial with respect to the charge before it, one involving interference with the union's performance of its role as a bargaining representative. Whether such access might be properly ordered in other circumstances, *e. g.*, in connection with a charge for violations in connection with multi-plant organizational efforts, is a matter not before the court. But see *J. P. Stevens & Co. v. N. L. R. B.*, 612 F.2d 881 (4th Cir. 1980), enf'g, 240 NLRB No. 35 (1979). Suffice it to say, the Board has in this particular portion of its order—perhaps from understandable frustration and impatience—imposed a requirement which cannot be sustained, even in the light of the prior derelictions by Florida Steel. This is particularly so in view of the other provisions of the order, which we are upholding, which call for notice to be given to employees throughout the company of the action taken on this unfair labor practice.

■ Considering the fact that notice is to be given employees by mailing, by posting, and by reading, we conclude, moreover, that the additional requirement for inclusion of the notice in "appropriate company publications" cannot be sustained as a remedial measure. The only purpose to be served by such additional publication would be to give notice of Florida Steel's violation to customers, suppliers, and other members of the public. While such a penalty might have the effect of deterring persons from violating the Act, it "is an exaction neither to make the employees whole nor to assure that they can bargain collectively with the employer through representatives of their own choice," and is not warranted. *Cf. Republic Steel Corp. v. N. L. R. B.*, 311 U.S. 7, 12–13, 61 S.Ct. 77, 80, 85 L.Ed. 6 (1940).

■ In summary, we conclude that paragraphs 2(d) and 2(e) of the Board's Order should be limited in application to the Croft and Indiantown plants of Florida Steel, that paragraph 2(b) of the Order should be modified to eliminate the requirement for inclusion of the notice [6] in company publications, and that in other respects the Order should be affirmed.

Accordingly, this cause is REMANDED to the National Labor Relations Board for revision of its Order in accordance with this opinion; and the Order, as so revised, is ENFORCED.

---

**6.** We note that the first paragraph of the prescribed notice, reading in part as follows:

"WE WILL NOT fail or refuse to bargain . collectively with United Steelworkers of America, AFL–CIO, as the exclusive representative of employees in any bargaining unit in any of our plants by failing or refusing to promptly furnish . . . .."

is readily susceptible of the interpretation that the company has been ordered to recognize the Steelworkers as bargaining representative for employees at all plants. In modifying its Order as specified in the text of this opinion, the Board should also revise this language of the notice to avoid the possibility of any such misunderstanding.