**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**CARPENTERS UNION LOCAL NO. 1622, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, AFL–CIO, Respondent.**

Nos. 83–7638, 83–7639.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 10, 1985.

Decided Jan. 21, 1986.

Designated for Publication April 9, 1986.

Sandra S. Elligers, William Bernstein, N.L.R.B., Washington, D.C., for petitioner.

David A. Rosenfeld, Van Bourg, Weinberg, Roger & Rosenfeld, San Francisco, Cal., for respondent.

Before GOODWIN, ALARCON, and POOLE, Circuit Judges.

PER CURIAM:

The National Labor Relations Board seeks enforcement of a broad cease and desist order against Carpenters Local 1622 for secondary picketing at two different construction sites. We hold that substantial evidence supports the Board's finding of violations and grant the Board's application for enforcement.

The Union initiated pickets at construction sites against nonunion general contractors Specialty Building Company ("Specialty") and Robert Wood & Associates, Inc. ("Wood") in 1981 at their respective projects. Several subcontractors were also at work at the sites. Both general contractors ("primaries") responded to the pickets by setting up reserved gate systems, designating separate gates for their own employees and suppliers, and for those of the other employers at the site.

The Board adopted the administrative law judge's finding that the Union picketed all entrances at both sites indiscriminately. The Board held that the Union's failure to honor the separate gate systems violated § 8(b)(4) of the National Labor Relations Act, as amended, 29 U.S.C. § 158(b)(4) (1982), which prohibits a Union from pressuring indirectly an employer with whom it has a labor dispute by picketing neutral or "secondary" employers and their employees who deal with the primary. *See Sailors' Union of the Pacific (Moore Dry Dock)*, 92 N.L.R.B. 547, 549 (1950) (articulating criteria for evaluating legality of common situs picketing); *Local 761, International Union of Electrical Workers v. NLRB*, 366 U.S. 667, 680–681, 81 S.Ct. 1285, 1293–1294, 6 L.Ed.2d 592 (1961) (creating exception to general rule against secondary picketing where, as at a manufacturing plant, primary exercises such control that neutral subcontractors essentially only service or promote the regular business of the primary).

The Board found that the Union failed to honor the separate gate system, picketing all entrances indiscriminately.

### A. Picketing at the Specialty Building Company site

■ Even though Specialty employees performed some of the work, oversaw the project, and arranged and paid for certain equipment and services for the project, the construction site was not like a manufacturing plant. The Board found that Specialty's role on the project was "relatively common" in the construction industry. The Board thus correctly invoked the rule, consistently applied to Union activities at construction sites, that picketing must be restricted to designated primary gates. *See, e.g., Markwell and Hartz, Inc. v. NLRB*, 387 F.2d 79, 82–83 (5th Cir.1967), *cert. denied*, 391 U.S. 914, 88 S.Ct. 1808, 20 L.Ed.2d 653 (1968); *Allied Concrete, Inc. v. NLRB*, 607 F.2d 827, 831 (9th Cir.1979) (ambulatory picketing rejected where a neutral gate was established and it was feasible for the union to confine its activities to the primary gate to avoid interrupting the neutrals); *Carpenters Local 470, United Brotherhood of Carpenters v. NLRB (Mueller-Anderson, Inc.)*, 564 F.2d 1360, 1362 (9th Cir.1977).

■ Further, while neither party disputes that Specialty's gate system was tainted prior to July 23, 1981 because Specialty employees used the neutral gate, Specialty successfully reestablished the system at that point. Accordingly, the picketing at the primary gate after July 22 constituted an unfair labor practice in violation of § 8(b)(4).

■ The Board found that Specialty posted new signs at the jobsite entrances clearly designating the primary and the neutral gates, that a Specialty foreman policed the system to ensure that it remained intact, and that Specialty sent the Union a mailgram on July 22 advising the Union of the reestablishment and tendered a copy of the notice to a Union picket. Further, after July 23 no Specialty employees or suppliers used the neutral gate. These ac-

tions, all of which are supported by substantial evidence in the record, constitute effective rehabilitation of the gate system. *See Carpenters Local 470 (Mueller-Anderson)*, 224 N.L.R.B. 315, 316 (1976), *enforced*, 564 F.2d 1360 (9th Cir.1977) (reserved gate system reestablished where primary updated signs, Union was notified of the changes, and primary's employees and suppliers thereafter used only the primary gate).

### B. Picketing at the Robert Wood site

■ Signs used to establish a separate gate system are sufficient if they clearly specify which gate the primary employees and suppliers are to use. *See NLRB v. National Association of Broadcast Employees and Technicians, Local 31*, 631 F.2d 944, 951–52 (D.C.Cir.1980).

■ The Union's allegations that Wood's signs were inadequate are unfounded. Wood set aside an entrance clearly designated for the exclusive use of Wood employees and suppliers; there is no record that Wood's employees or suppliers used any other entrance; and the Union was notified of the establishment of the reserved gates.

Further, the primary gate was prominently located. Thus, even if the record supported the Union's charge that the neutral gate was located in an obscure site, the pickets would not have been entitled to stray from the primary gate. *See Plumbers and Steamfitters Local 398*, 261 N.L.R.B. 482, 486 (1982); *cf. United Brotherhood of Carpenters and Joiners, Local 354*, 268 N.L.R.B. 382, 386–87 (1983) (pickets need not confine their activities to obscure primary gate where picketing would be ineffective), *review dismissed*, 767 F.2d 934 (9th Cir.1985).

### C. Propriety of broad orders

■ Where "a Union has demonstrated a 'proclivity' to violate the secondary boycott provisions of the Act," the Board acts within its discretion in issuing broad remedial orders which are not limited to the parties

or the dispute involved in the particular case. *NLRB v. Sequoia District Council of Carpenters,* 499 F.2d 129, 129 (9th Cir. 1974) (per curiam).

■ The § 8(b)(4)(i) and (ii)(B) violations by Local 1622 against Specialty and Wood, coupled with violations which were the subject of a 1981 settlement stipulation, constitute the propensity necessary to justify a broad cease and desist order.

The 1981 stipulation settled charges of secondary picketing violations at *three* additional sites against *two* additional employers. The agreement stated that it could "be considered as though it were an adjudicated determination of the Board, enforced by an appropriate United States Court of Appeals, that the Union has engaged in the conduct alleged in the complaints."

The Board has not exceeded its discretion in ordering the Carpenters Local 1622 to cease and desist from impermissible secondary picketing. We therefore grant the Board's application for enforcement.