**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**NATIONAL MEDICAL HOSPITAL OF COMPTON, dba Dominguez Valley Hospital, Respondent.**

**No. 89–70054.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 16, 1989.

Decided July 5, 1990.

As Amended on Denial of Rehearing Aug. 29, 1990.

Frederick Havard, N.L.R.B., Washington, D.C., for petitioner.

J. Richard Thesing, Menlo Park, Cal., for respondent.

Before SCHROEDER, NELSON and WIGGINS, Circuit Judges.

SCHROEDER, Circuit Judge:

In this unusually protracted labor relations controversy, the National Labor Relations Board seeks enforcement of a second order requiring the employer, National Medical Hospital of Compton, to bargain in good faith with Local 399 of the Service Employees International Union. In this proceeding, the Board agreed with the administrative law judge ("ALJ") that the employer had prematurely withdrawn recognition of the union during the year in

which it was required to bargain pursuant to the Board's original order in 1981 holding that the employer had unlawfully refused to bargain. As a remedy for this second violation, the Board extended the certification year for six months.

The employer does not dispute the lawfulness of the Board's 1981 order that the employer had a duty to recognize and bargain with the union for a year. However, the employer here challenges the Board's measurement of that year, contending that the Board acted in contravention of its own precedent when it held that the year commenced when the parties sat down at the bargaining table, rather than at an earlier time. We have carefully reviewed the authorities cited by both parties in support of their positions, and conclude that the Board's decision was supported by prior rulings and in contravention of none. We enforce the Board's order.

■ It is well established labor law that once a labor union has been certified, it enjoys a non-rebuttable presumption of continued majority status for a reasonable time, usually one year. *N.L.R.B. v. Best Products Co., Inc.*, 765 F.2d 903, 913 (9th Cir.1985). During the certification year, the employer has a duty to recognize and bargain with the union. *N.L.R.B. v. Wilder Constr. Co., Inc.*, 804 F.2d 1122, 1124 (9th Cir.1986). Failure to bargain is considered an unfair labor practice. *Mingtree Restaurant, Inc. v. N.L.R.B.*, 736 F.2d 1295, 1298 (9th Cir.1984).

■ In this case the Board certified Local 399 as the exclusive collective bargaining representative of the hospital's employees on August 27, 1980. The employer chose to test the certification by refusing to bargain with the union, thereby forcing an unfair labor practice proceeding. The Board concluded in 1981 that the union had been properly certified and that the employer's refusal to bargain violated sections 8(a)(1) and (5) of the National Labor Relations Act. *National Medical Hosp.*, 257 N.L.R.B. 643 (1981), *enforced without op.*, 685 F.2d 444 (9th Cir.1982).

The operative portion of the original order for purposes of this proceeding provided that the certification year would begin when the employer "commenced to bargain in good faith with the union ...". *See National Medical*, 257 N.L.R.B. at 643. The language is more or less standard, and similar language is found in other orders in Board decisions relied upon by both the employer and the Board. *See, e.g., Colfor, Inc.*, 282 N.L.R.B. 1173, 1173 (1987); *Alamo Cement Co.*, 277 N.L.R.B. 309, 310 (1985); *Chicago Health and Tennis Clubs*, 251 N.L.R.B. 140 (1980); *Groendyke Transport, Inc.*, 205 N.L.R.B. 244 (1973).

Following this court's decision enforcing that order, the union and the employer exchanged correspondence in which the employer in June of 1982 indicated its willingness to discuss a time and date for bargaining. Actual bargaining did not begin, however, until September of 1982. In June of 1983, the employer declined to bargain any further with the union, claiming it no longer represented a majority of the employees. This refusal to recognize the union came less than a year after bargaining had begun, but more than a year after this court's decision enforcing the order to bargain and also more than a year after the employer indicated its willingness to discuss a time to begin bargaining.

While the union's original unfair labor practice charge alleged that the employer unlawfully withdrew recognition because the employer had relied upon an improperly circulated petition, the ALJ raised *sua sponte* the issue whether the withdrawal of recognition was also unlawfully premature. In his decision, the ALJ found that the initial period of certification began when the parties "actually beg[a]n to negotiate," on September 13, 1982.

The Board entertained the employer's subsequent motion to reopen the record and consider evidence of correspondence between the employer and the union with respect to the commencement of negotiations. However, the Board, upholding the decision of the administrative law judge, agreed that the date of the first formal bargaining session, and not any earlier date, commenced the certification year, and that the employer's refusal to bargain in June of 1983 violated the prior order requiring bargaining for a year.

There is no question that the Board's decision that bargaining "commenced" when the parties actually sat down to bargain represents a reasonable interpretation of the language of its own order. If our inquiry were focused upon the language of the order alone, the result would be clear. The employer's argument is, however, that the Board's holding nevertheless should be reversed because it is inconsistent with prior Board decisions, and that these decisions require that the certification year be measured from the date of this court's enforcement of the Board's original order or, at the very latest, when the employer offered to discuss when bargaining should begin.

The employer is correct that the Board is expected to follow prior decisions and may not significantly depart without explanation from its own established authority. *See, Atchison, Topeka & Santa Fe Ry. v. Wichita Bd. of Trade*, 412 U.S. 800, 808–09, 93 S.Ct. 2367, 2375, 37 L.Ed.2d 350 (1973) (plurality opinion); *Shaw's Supermarkets, Inc. v. N.L.R.B.*, 884 F.2d 34, 36–37 (1st Cir.1989). Deciding whether it has violated those principles therefore requires us to examine with some care both the authorities relied upon by the Board in reaching its decision and the authorities relied upon by the employer in asking us to reject the Board's position in this case.

Each side places principal reliance on a total of four N.L.R.B. decisions which involve the application of an underlying order containing language similar to that in this case. The standard language requires the employer to bargain with the union for one year, "beginning on the date when the employer commences good faith bargaining with the union." The Board correctly cites *Groendyke*, 205 N.L.R.B. at 244, and *Alamo*, 277 N.L.R.B. at 311, in support of its position. In *Groendyke*, the Board held "that the certification year commenced on November 30, 1971 because bargaining by the parties began on that date," 205 N.L.R.B. at 244. The Board thereby rejected March 13, 1970, the date that the order was issued requiring that the employer bargain.

In *Alamo* the Board found that August 22, 1980, the date that "the company and the Union held their first bargaining session," commenced the certification year, 277 N.L.R.B. at 311, and not the date the order requiring bargaining was enforced or August 6, 1980, the date when the company agreed to bargain. *Id.* at 310. These two decisions therefore clearly reckon the certification year period from the date that bargaining actually begins and not from the date the employer agrees to a union request to begin bargaining. This court has indicated agreement, because the purpose of the Board's orders is to compel negotiation, not merely agreements to meet. *See N.L.R.B. v. Best Products Co., Inc.*, 765 F.2d 903, 914 (9th Cir.1985) ("The beginning of the irrebutable presumption of a union majority may properly run from the date of the Board's decision ... until one year after [the employer] complies with the Board bargaining order's command to negotiate in good faith"); *see also N.L.R.B. v. Lee Office Equipment*, 572 F.2d 704, 707 & n. 5 (9th Cir.1978); *N.L.R.B. v. C & C Plywood Corp.*, 413 F.2d 112, 115 (9th Cir. 1969).

The employer relies principally on two cases, *Chicago Health & Tennis Clubs, Inc.*, 251 N.L.R.B. 140, and *Colfor, Inc.*, 282 N.L.R.B. 1173. In these cases, however, the relief requested by the employers was denied.

In *Chicago Health & Tennis Clubs, Inc.*, 251 N.L.R.B. 140, an order issued from the Board and was enforced by the Seventh Circuit on January 17, 1978. *Id.* at 140. On February 9, the employer made an oral offer to bargain with the union subject to its right to pursue remedies in the Supreme Court. On February 15, 1978, the employer sent to the union written terms of its offer. On February 17, the employer denied the union's request that it post a notice of a union meeting. No further communications were made between the parties until after the Supreme Court denied the writ of certiorari on June 19. Subsequently, the employer agreed to bargain and furnished requested information to the company. On October 9, 1978, the employer was requested to set a date for commencement of negotiations, the first of

which occurred on November 2. The employer here relies heavily on a portion of the Board's decision:

> The Regional Director recognized, and we agree, that the pivotal issue in this case is whether the employer made a proper offer to bargain on either February 9 or 15, so that the certification year started at one of those points. If that query is answered in the affirmative, the petition was timely; otherwise it was not.

*Id.* This statement, the employer argues, means that the date on which a "proper offer to bargain" is made, and not the date of formal negotiations, commences the certification year.

However, not only did the Board reject February 9 or 15 as the commencement date because the employer's offer to bargain was conditional, but it also rejected October 9, when the employer's offer to bargain was unconditional. Instead, the certification year was held not to begin until November 2, the *first day of formal negotiations. Id.* at 141. Thus while the employer in this case asks us to view *Chicago Health & Tennis* as authority for the proposition that the pivotal question in every certification year case is the date of an offer to bargain, that case in fact supports the Board's position.

In *Colfor,* the order was enforced on May 20, 1982. The Board noted that "[g]ood-faith bargaining commenced on 1 November 1982, when [the employer's] former counsel, provided [the union's] former counsel, with previously requested information and informed [the union] that [the employer] was ready to begin bargaining." 282 N.L.R.B. at 1173. The date the certification year began was not an issue in the case, however, because the employer stopped bargaining on May 25, 1983, *id.,* which was less than a year after the employer indicated it was ready to bargain. Similarly, in *Parkview Nursing Center II Corp.,* 260 N.L.R.B. 243, 253 n. 16 (1982), the parties did not contest that the certification year started on date of court decision.

The employer also relies upon settlement agreement cases which measure the certification year from the actual date of certification. *See, e.g., Schnelli Enterprises, Inc.,* 262 N.L.R.B. 796 (1982); *Mar–Jac Poultry Co., Inc.,* 136 N.L.R.B. 785 (1962); *Mammoth of California, Inc.,* 253 N.L.R.B. 1168, 1170 (1981) ("Thus, from the time of the settlement agreement, the parties were entitled to and required to bargain for that portion of the certification year to which the union was entitled free of any encumbrances."). This reliance is misplaced because a principled distinction exists between cases in which an employer initially accepts the union as the bargaining representative and signs a settlement agreement, and cases like this one, where the employer from the outset contests the certification and forces the union to initiate unfair labor practice proceedings in order to obtain a coercive order of the Board. Therefore we agree with the Board that there is no inconsistency in its cited decisions.

We observe as well that the present case involves the Board's interpretation of its own remedial order. In interpreting the language of its own order, the Board, of course, enjoys a good deal of discretion. *See Brooks v. N.L.R.B.,* 348 U.S. 96, 104, 75 S.Ct. 176, 181, 99 L.Ed. 125 (1954) (within Board's discretion to decide when one-year period should start). We also think the Board's interpretation is in accord with the purposes of the Act. As the Board in this case held, a rule that the certification year began earlier than the first actual bargaining date "would not assure the year of post-certification insulated good faith bargaining to which a collective bargaining representative is entitled." We also agree that this rule encourages employers to commence bargaining promptly. *Cf. Brooks,* 348 U.S. at 104, 75 S.Ct. at 181. Finally, this is not a rule that can be manipulated by the union unfairly to extend the certification year. The Board made clear that it would not equate the commencement of the bargaining year with the first bargaining session if there had been significant delay in the commencement of bargaining attributable to the union. We approve of that qualification. Here, the Board looked at the evidence proffered by the employer on that issue and saw no evidence of bad faith.

■ The employer also contends that it was denied due process of law because the issue of premature withdrawal of recognition was not litigated before the Administrative Law Judge. The record reflects that the ALJ raised *sua sponte* the premature withdrawal issue. The complaint charging the employer with 1983 unfair labor practices alleged that the hospital had violated section 8(a)(1) of the Act by soliciting employees to sign an anti-union petition to support withdrawal of recognition from the union, by threatening employees with discharge if they supported union representation, and by requesting that employees wear anti-union buttons. The ALJ found the hospital guilty of those charges and in addition, found a violation of sections 8(a)(5) and (1) by virtue of the withdrawal of recognition which indisputably flowed from the conduct underlying the other charges.

The Board, in its review, permitted the hospital to reopen the record in order to submit any evidence and to raise any argument it wished in order to refute the Administrative Law Judge's holding on the issue of premature withdrawal. The Board reviewed the proffered documents offered in support of the hospital's contention that the union was responsible for the delay in commencing bargaining negotiations and determined that the evidence did not support that position.

The actual findings are not now directly challenged, however. The only issue raised before us is whether or not the employer had a fair opportunity to litigate. The Board correctly points out that the failure of the complaint to specify an issue does not preclude findings of an unfair labor practice with regard to that issue so long as it has been fully and fairly litigated during the course of the Board proceeding. *George C. Foss Co. v. N.L.R.B.*, 752 F.2d 1407, 1411 (9th Cir.1985); *Industrial, Technical and Professional Employees Division v. N.L.R.B.*, 683 F.2d 305, 307–08 (9th Cir.1982). In this case the issue of premature withdrawal of recognition arose from exactly the same conduct that formed the basis of the complaint. The facts as to what occurred are not seriously disputed. The Board reopened the entire record, giving the employer the opportunity to present any evidence it wished, and considered that evidence in making its determination. The employer was not denied a fair opportunity to litigate.

■ The Board did deny a motion by the employer, after issuance of the Board's decision, to reopen the record for purposes of considering another letter from the union to the employer. In denying that motion, the Board pointed out that there was no showing that the letter was newly discovered or that it would have had any effect upon the Board's decision. The letter simply stated that the employer's bargaining representative would be unavailable for negotiations between August 16 and Labor Day because of vacation. Denial of reopening was not an abuse of discretion. *See N.L.R.B. v. Cutter Dodge, Inc.*, 825 F.2d 1375, 1380 (9th Cir.1987).

■ Similarly without merit is the contention that the remedy ordered, extension of the certification year, was beyond the Board's discretion. Section 10(c) of the Act, 29 U.S.C. § 160(c), authorizes the Board to fashion appropriate remedial orders to expunge the effects of unfair labor practices. The Board's discretion in selecting appropriate remedies is "exceedingly broad and is to be given special respect by reviewing courts." *General Teamsters Local No. 162 v. N.L.R.B.*, 782 F.2d 839, 844 (9th Cir.1986). We will not overturn the Board's chosen remedy unless it represents a "clear abuse of discretion." *Id.*

When a party refuses to bargain during the certification year, the Board will extend the usual one year period to prevent that party from gaining an unfair advantage from its failure to bargain. *Colfor, Inc.*, 282 N.L.R.B. at 1174. In the absence of "flagrant violations" the Board often extends the certification year by that part of the year remaining when unfair labor practices interrupt good-faith bargaining. *E.g.*, *Schnelli Enterprises, Inc.*, 262 N.L.R.B. 796, 796 (1982). Even absent a bad-faith refusal to bargain, however, the Board may, under proper circumstances, order a complete renewal of the certification year. *Glomac Plastics, Inc.*, 234 N.L.R.B. 1309, 1309 n. 4 (1978), *enforced*, 592 F.2d 94 (2d Cir.1979). Thus, the extension time need

not be the product of "simple arithmetic calculation." *Colfor*, 282 N.L.R.B. at 1174.

The Board here actually rejected the ALJ's conclusion that there should be a full year's extension. The Board extended the certification year for only six months. It stated that extension for that period was needed because of "the disruptive effect that the Respondent's premature withdrawal of recognition has had on the bargaining process...." The Board believed a mere two-month extension would fail to provide a reasonable period for the parties to resume negotiations. *See also Colfor*, 282 N.L.R.B. at 1175 (six-month extension ordered although parties only two months short of full bargaining year). We recognize the Board's expertise in structuring remedies for violations of the Act, *see General Teamsters Local No. 162*, 782 F.2d at 844, and hold that the extension order did not constitute an abuse of discretion.

ENFORCEMENT GRANTED.