**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**C.E. WYLIE CONSTRUCTION COMPANY, Respondent.**

No. 90–70033.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 1, 1991.

Decided June 3, 1991.

William Wachter, N.L.R.B., Washington, D.C., for petitioner.

Mark T. Bennett, Merrill, Shultz & Wolds, San Diego, Cal., for respondent.

Before NORRIS, HALL and TROTT, Circuit Judges.

TROTT, Circuit Judge:

The National Labor Relations Board ("NLRB") petitions us to enforce a cease-and-desist order against C.E. Wylie Construction Company ("Wylie"). Wylie contends the NLRB's order is overly broad in three respects. We conclude Wylie's first two claims of over-breadth require a remand for further findings. Wylie's third argument is meritless.

## FACTS AND PROCEEDINGS BELOW

Wylie is a general contractor that recently completed a construction project at the Tustin Marine Corps Air Station in Tustin, California. Wylie subcontracted the electrical work to Shasta Electric ("Shasta"), and the sheet metal, heating and air conditioning work to R.J. Lanthier Company ("Lanthier"). Shasta and Lanthier are unionized. Wylie is not. Shasta's employees are represented by Local 441, International Brotherhood of Electrical Workers ("Local 441"), which is a party to a collective bargaining agreement ("CBA") with Shasta. Lanthier's employees are represented by Local 206, Sheet Metal Workers International Association ("Local 206"), which is a party to a CBA with Lanthier. While working in the Tustin area, Lanthier's employees are covered by a CBA secured by Sheet Metal Workers Local 420, Local 206's sister union.

All three CBAs require that union representatives be allowed reasonable access to jobsites in order to meet with represented employees and conduct safety inspections. On November 12, 1987, a Local 441 representative attempted to visit the Tustin jobsite, but was turned away by Wylie officials. On January 8, 1988, a Local 420 representative also was denied access to the Tustin jobsite. As a result, Locals 441, 420 and 206 filed unfair labor practice charges with the NLRB.

An Administrative Law Judge ("ALJ") found Wylie had committed unfair labor practices under section 8(a)(1) of the National Labor Relations Act ("NLRA"), by interfering with the section 7 right of union representatives to enter the jobsite to conduct legitimate union business. *See* 29 U.S.C. §§ 157–158 (1988). The ALJ reached this conclusion after balancing Wylie's property interest in the construction site with the subcontractor employees' interest in meeting with union representatives. Though Wylie is not a party to the CBAs binding the two subcontractors, which require reasonable jobsite access, the ALJ gave the existence of those CBAs some weight in finding for the unions. In addition, the ALJ determined that there were no other reasonable means the unions could take to monitor Wylie's compliance with safety regulations. The ALJ then issued a cease-and-desist order, the relevant portion of which was affirmed by the NLRB.

Wylie does not challenge the NLRB's finding that it committed unfair labor practices; it contests only the breadth of the NLRB's cease-and-desist order. The NLRB seeks enforcement of the order.

The NLRB's order states in pertinent part that Wylie must cease and desist from:

> Interfering with the rights of business representatives from IBEW 441, Sheet Metal Workers 420, Sheet Metal Workers 206, or any other labor organization, to enter construction jobsites for the purpose of engaging in lawful union activity related to the servicing of bargaining unit members, making a safety check or otherwise policing or enforcing a collective bargaining agreement, while the union signatory subcontractor is present and working on the jobsite; *provided* however, that nothing herein shall prohibit Respondent from enforcing uniformly applied, reasonable rules regarding safety, working time and security; *provided further* that the unions are given clear notice of such rules.

(emphasis in original).

Wylie claims the order is overly broad for three reasons. First, because it forbids Wylie from denying jobsite access to "any other labor organization," not just the three specified unions. Second, because it is not limited to the Tustin jobsite, where the unfair labor practices were found to have occurred. Third, because it is not limited to situations where the subcontractor union requesting jobsite access has a CBA with the subcontractor that requires such access.

## STANDARD OF REVIEW

■ The NLRB's discretion in selecting remedies is " 'exceedingly broad,' " and therefore a remedy will be enforced unless it represents a " 'clear abuse of discretion.' " *NLRB v. National Medical Hosp.*, 907 F.2d 905, 910 (9th Cir.1990) (quoting *General Teamsters Local No. 162 v. NLRB*, 782 F.2d 839, 844 (9th Cir.1986)); *see also Teamsters Cannery Local 670 v. NLRB*, 856 F.2d 1250, 1259 (9th Cir.1988). Such an abuse of discretion is present if it is " 'shown that the order is a patent attempt to achieve ends other than those that can be fairly said to effectuate the policies of the Act.' " *Teamsters Cannery*, 856 F.2d at 1260 (quoting *NLRB v. International Assoc. of Bridge, Structural & Ornamental Iron Workers, Local 433*, 600 F.2d 770, 777–78 (9th Cir.1979), *cert. denied*, 445 U.S. 915, 100 S.Ct. 1275, 63 L.Ed.2d 599 (1980)).

## ANALYSIS

### I

*Jobsite Access to "Any Other Labor Organization"*

The NLRB's order requires Wylie to allow jobsite access to "any other labor organization" representing subcontractor employees working on Wylie's construction sites. Wylie contends the order should apply only to Locals 206, 420 and 441, because these were the only unions previously denied access.

■ At the outset, we note that it may appear absurd for Wylie to protest an order requiring it to refrain from actions that

admittedly would violate the NLRA. A cease-and-desist order, however, is not merely a prohibition on future conduct. If Wylie is found in violation of the cease-and-desist order, it is subject not only to the normal remedial measures, but also to contempt sanctions for disobeying the order. NLRB orders thus should be sufficiently narrow to avoid exposing the parties subject to them to a minefield of contempt sanctions for future violations of the NLRA that are unrelated to past conduct. *See NLRB v. Express Publishing Co.*, 312 U.S. 426, 436, 61 S.Ct. 693, 699–700, 85 L.Ed. 930 (1941).

Despite the narrow standard of review already discussed, the Supreme Court and the Ninth Circuit have limited in significant ways the NLRB's power to fashion prospective remedies.

In *Express Publishing*, the NLRB found Express Publishing had committed the unfair labor practice known as "refusal to bargain" and enjoined it not only from committing that practice but from committing *any act* in violation of the NLRA. The Court held the order was overly broad and that the NLRB did not have "authority to restrain generally all other unlawful practices which it has neither found to have been pursued nor persuasively to be related to the proven unlawful conduct." 312 U.S. at 433, 61 S.Ct. at 698. The Court continued:

> To justify an order restraining other violations it must appear that they bear some resemblance to that which the employer has committed or that danger of their commission in the future is to be anticipated from the course of his conduct in the past.

*Id.*, at 437, 61 S.Ct. at 700; *accord May Dep't Stores Co. v. NLRB*, 326 U.S. 376, 392–93, 66 S.Ct. 203, 213, 90 L.Ed. 145 (1945).

In *Communications Workers v. NLRB*, 362 U.S. 479, 80 S.Ct. 838, 4 L.Ed.2d 896 (1960) (per curiam), the Supreme Court faced a case similar to the one presented here. There, the NLRB determined that several unions had coerced employees of Ohio Consolidated Telephone Company in the exercise of their right not to join a union. The NLRB issued an order requiring the unions to cease and desist coercing the employees of that company or the employees of "any other employer." *Id.* at 480, 80 S.Ct. at 839. The Court struck down the quoted portion of the order because the unions had not coerced the employees of other companies, and there was insufficient evidence indicating they were inclined to do so. *Id.* at 480–81, 80 S.Ct. at 839–40.

Following *Communications Workers,* we have held the NLRB may issue orders protecting parties other than those who were harmed by the NLRA violation only when there is a showing that the NLRA violator is likely to harm others. *See Nelson v. IBEW, Local Union No. 46,* 899 F.2d 1557, 1564–65 (9th Cir.1990); *NLRB v. Brotherhood of Teamsters and Auto Truck Drivers, Local No. 85,* 458 F.2d 222, 226 (9th Cir.1972).

■ In the present case, the NLRB's order forbids Wylie from barring jobsite access to "any other labor organization" representing subcontractor employees working on its construction sites. Wylie contends there is no evidence indicating it is inclined to deny access to other unions. The NLRB claims, by contrast, that "it is apparent that … other unions present on [Wylie's] jobsites could reasonably expect a similar response to their access requests."

The ALJ and the NLRB did not address the question whether Wylie likely will deny jobsite access to other unions, and indeed there are few findings in their decisions indicating Wylie is so inclined. Because of the dearth of such findings, Wylie asks us to infer there is no evidence of proclivity. The NLRB, on the other hand, would have us search the trial record for such evidence. We reject both suggestions. Instead, we remand to the NLRB for further findings. The NLRB shall determine whether Wylie demonstrates a proclivity to deny jobsite access to other unions. If no proclivity is shown, the NLRB must modify its order to delete the language "any other labor organization."

## II

*Whether the Order Should Have Been Limited to the Tustin Site*

■ Wylie argues the NLRB's order should be narrowed even further, to apply only to the Tustin jobsite and not its other construction sites. Wylie relies primarily on three cases limiting the coverage of NLRB cease-and-desist orders to the plants or factories where the NLRA violations occurred: *Montgomery Ward & Co. v. NLRB*, 339 F.2d 889, 894 (6th Cir.1965); *NLRB v. Thompson Ramo Wooldridge, Inc.*, 305 F.2d 807, 811 (7th Cir.1962); *NLRB v. Ford Motor Co.*, 119 F.2d 326, 330–31 (5th Cir.1941). In at least two of these cases, the courts limited the orders geographically because there was no showing that the NLRA violations at issue were likely to occur at other locations.[1] In *Montgomery Ward*, for instance, the court modified an order that applied to all the company's plants because there was "no evidence presented . . . of any national *pattern* of unfair labor practices." 339 F.2d at 894 (emphasis supplied). Other courts have adopted similar lines of reasoning. *See e.g., NLRB v. S.E. Nichols, Inc.*, 862 F.2d 952, 960–961 (2d Cir.1988), *cert. denied*, 490 U.S. 1108, 109 S.Ct. 3162, 104 L.Ed.2d 1025 (1989); *United Steel Workers v. NLRB*, 646 F.2d 616, 635–39 (D.C.Cir. 1981); *Florida Steel Corp. v. NLRB*, 620 F.2d 79, 83 (5th Cir.1980); *NLRB v. Jack La Lanne Management Corp.*, 539 F.2d 292, 295 (2d Cir.1976); *United Aircraft Corp. v. NLRB*, 440 F.2d 85, 100 (2d Cir. 1971); *Decaturville Sportswear Co. v. NLRB*, 406 F.2d 886, 889 (6th Cir.1969); *J.P. Stevens & Co. v. NLRB*, 380 F.2d 292, 304 (2d Cir.), *cert. denied*, 389 U.S. 1005, 88 S.Ct. 564, 19 L.Ed.2d 600 (1967).[2]

The NLRB attempts to distinguish the above cases on the ground that they involved NLRA violations at permanent facilities, whereas Wylie's construction business is transitory, moving from jobsite to jobsite. An order covering all Wylie jobsites (present and future) is essential, it argues, because Wylie otherwise would be able to reestablish its "access denial policy" at each new jobsite, evading orders limited to the individual sites it leaves behind. The Tustin jobsite, for example, is already completed, so an NLRB order limited to that location would have no practical effect.

The NLRB exaggerates the anticipated reach of our holding. We do not say that the NLRB may never apply cease-and-desist orders to construction sites other than those where the NLRA violations occurred. On the contrary, it is arguable, for the reasons suggested, that the NLRB should have a somewhat freer hand in drafting orders in construction industry cases. There is a difference, however, between allowing the NLRB increased discretion in this area and permitting it to issue orders without providing reasons. We decline to let the NLRB do the latter. We therefore hold that an NLRB order extending to jobsites other than those where the NLRA violations at issue were found must be supported by a finding that the offending party is likely to commit similar violations at other sites.

In the present case, the ALJ and NLRB made no findings supporting their decision to apply the order to locations other than the Tustin jobsite. We therefore remand this case to the NLRB. If the NLRB finds that violations are unlikely to occur at other sites, it must confine its order to the Tustin jobsite.

## III

*Whether the Order Should be Limited to Situations Where a CBA Between the Subcontractor and Union Permits Jobsite Access*

■ The NLRB's order provides that Wylie must allow jobsite access to all un-

---

1. The court in *Thompson Ramo* did not explain why it confined the order before it to a particular location.

2. *See generally*, C.J. Morris, *The Developing Labor Law* 1655 (2d ed. 1983) ("The [cease-and-desist] order is generally confined to the particular geographic location involved. However, if there has been a pattern or practice of unlawful conduct, the order may cover all of the employer's facilities.").

ions representing subcontractor employees working on Wylie's sites. The order applies, then, even if the union requesting access has no CBA with a subcontractor that requires such access. Wylie contends the NLRB's order should not apply where there is no CBA requiring jobsite access. In addition, Wylie argues, even where a CBA between a union and subcontractor *does* mandate jobsite access, the CBA terms governing such access should control whether access must be granted in a particular case.

In *NLRB v. Babcock & Wilcox Co.*, 351 U.S. 105, 112, 76 S.Ct. 679, 684, 100 L.Ed. 975 (1956), the Supreme Court held that when the section 7 rights of employees conflict with the property rights of employers, the NLRB must seek an accommodation between the two.

In *Villa Avila*, 253 N.L.R.B. 76 (1980), enf'd, *N.L.R.B. v. Villa Avila*, 673 F.2d 281 (9th Cir.1982), the NLRB balanced the rights of a group of general contractors, who asserted a property interest in their jobsites, against the section 7 rights of their subcontractors' employees, who wished to meet on the jobsites with union representatives. The general contractors had denied the union representatives access to the jobsites, though CBAs between the unions and subcontractors called for such access. The NLRB determined that the general contractors had diminished their property interest in the jobsites by inviting the subcontractors to work on them. *Id.* at 81. It also found that the employees had a significant interest in meeting with union representatives on the jobsites. *Id.* at 81–82. The NLRB then concluded:

> Respondents' property rights, under the factual setting herein, must, on balance, yield to the Section 7 rights under the Act, and ... Respondents may not deny or restrict jobsite access to union representatives except to the limited extent discussed generally above.

*Id.* at 82. The decision in *Villa Avila* does not appear to turn on the fact that the unions requesting access were parties to CBAs requiring such access. Rather, the

decision speaks in terms of a general right of access guaranteed by section 7 of the NLRA.

In the present case, the NLRB balanced Wylie's property interest against the section 7 rights of the subcontractor employees, and concluded based on *Villa Avila* that Wylie had violated the NLRA by denying the unions access to the Tustin jobsite. Wylie claims that in balancing these rights, the NLRB accorded "decisive weight" to the fact that the CBAs between the unions and subcontractors required jobsite access. Therefore, Wylie claims, the NLRB's order logically should apply only where CBAs mandating access are present.

Wylie's first premise is incorrect: the NLRB did not accord "decisive weight" to the CBA provisions requiring jobsite access. The NLRB stated: "As noted by the [ALJ], these contractual access provisions *lend further support* to the General Counsel's claim that the Unions' attempts to gain access to the construction jobsites entailed the exercise of strong Section 7 rights." (emphasis supplied). Indeed, it is probable that in rejecting Wylie's proposed limitation, the NLRB implicitly decided that in future cases involving the absence of access provisions the balance would still tip in favor of the unions. Wylie points to no case holding that the balance must tip in favor of the employer where no access provisions exist. We therefore reject Wylie's contention.

Wylie also argues that the NLRB's refusal to limit its order to cases where CBAs require jobsite access conflicts with the *Babcock* and *Jean Country*[3] principle of case-by-case balancing. Every NLRB remedy that applies prospectively conflicts with this rule somewhat, however, so Wylie's argument carries little weight.

■ Finally, Wylie notes that jobsite access is sometimes limited by the terms of a CBA. Wylie then states that the NLRB's order contemplates an unrestricted right of jobsite access, even where a CBA between the union and subcontractor limits the terms of access. Wylie's reading of the

---

**3.** 291 N.L.R.B. 4 (1988).

order is unsupported. On its face, the order applies only where there is a "right" of access. The natural implication is that, to the extent that such a right has been limited by prior agreement, the order mandates access only insofar as the agreement does. There was no need for the NLRB to make explicit the obvious. We hold the NLRB acted within its discretion in not limiting its order to situations where the subcontractor union requesting access is covered by a CBA granting such access.

ENFORCED IN PART AND REMANDED IN PART.