996 F.2d 1226
 148 L.R.R.M. (BNA) 2320
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
THEATRE & AMUSEMENT JANITORS UNION, LOCAL 9, SERVICE
EMPLOYEES INTERNATIONAL UNION, AFL-CIO, Respondent.
 No. 91-70749.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 15, 1993.
Decided June 24, 1993.
 
 Before FERGUSON, CANBY and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The National Labor Relations Board ("NLRB") petitions the court to enforce its order against Theatre and Amusement Janitors Union, Local 9, Service Employees International Union, AFL-CIO ("Union"). The Union opposes the petition on the ground that the NLRB's order is overly broad. We modify the order and grant enforcement of the order as modified.
 
 
 3
 * FACTS
 
 
 4
 The Union operates a hiring hall to employ janitors in theaters, race tracks, and other entertainment businesses in San Francisco. American Building Maintenance Company ("ABMC"), which provides janitorial services for several theaters in San Francisco, has a collective bargaining agreement with the Union under which ABMC notifies the Union when it needs new or additional employees, and the Union refers applicants to ABMC for such jobs.
 
 
 5
 In 1987, Yhya Mohamed, then a Union member, had been unable to obtain work through the hiring hall for several months and believed that other members were improperly being dispatched to fill openings before him. When the Union refused to comply with his request to review its dispatching records, Mohamed filed an unfair labor practice charge. The NLRB found that the Union's refusal to furnish this information to Mohamed violated Section 8(b)(1)(A) of the National Labor Relations Act ("the Act") and ordered the Union to provide him with the requested information. Theatre and Amusement Janitors Union, Local 9 (Blumenfeld Enterprises), 290 N.L.R.B. 1 (1988).
 
 
 6
 In 1990, Mohamed filed several charges against the Union. He alleged that the Union had violated the Act by (1) failing to dispatch him to a job in March 1990 because he had filed the 1987 charge, (2) denying him access to the exclusive hiring hall because he was no longer a Union member, and (3) arbitrarily refusing to furnish him with dispatching records in March, May, and November 1990. In 1990, James Coen, a Union member, also filed charges alleging that the Union had violated the Act by refusing to dispatch him to jobs in August 1989 and September 1990 in retaliation for his refusal to picket an employer with whom the Union had a dispute. These charges were consolidated and a hearing was held before an administrative law judge ("ALJ"). The ALJ found in favor of Mohamed and Coen and recommended that a broad cease and desist order be issued against the Union. The NLRB agreed and adopted the ALJ's proposed order. Theatre and Amusement Janitors Union, Local 9 (American Building Maintenance Co.), 303 N.L.R.B. 735 (1991). The NLRB then filed this petition for enforcement.
 
 II
 ANALYSIS
 
 7
 The Union contends that the NLRB's cease and desist order is overly broad because it protects persons other than Mohamed and Coen. The Union argues that, because the evidence did not establish that the Union had a proclivity to violate the Act, the NLRB's order should have applied only to Mohamed and Coen. We agree.[1]
 
 
 8
 The NLRB has broad discretion in devising remedies, and we will enforce a remedy "unless it represents a 'clear abuse of discretion.' " NLRB v. C.E. Wylie Constr. Co., 934 F.2d 234, 236 (9th Cir.1991) (quoting NLRB v. National Medical Hosp., 907 F.2d 905, 910 (9th Cir.1990)) (additional quotation omitted). Nevertheless, the Supreme Court has set limits on the NLRB's broad discretion. The NLRB does not have "authority to restrain generally ... unlawful practices which it has neither found to have been pursued nor persuasively to be related to the proven unlawful conduct." NLRB v. Express Publishing Co., 312 U.S. 426, 433 (1941). Even if the NLRB finds that a party has violated the Act, the NLRB is justified in entering an order restraining "other violations" only if "the danger of their commission in the future is to be anticipated from the course of ... conduct in the past." Id. at 437. Thus, the determination of the appropriate breadth of a remedial order depends on the circumstances of the particular case. Id. at 436.
 
 
 9
 Similarly, "the NLRB may issue orders protecting parties other than those who were harmed by the ... violation [of the Act] only when there is a showing that the ... violator is likely to harm others." Wylie, 934 F.2d at 237; NLRB v. Sequoia Dist. Council of Carpenters, 499 F.2d 129, 129 (9th Cir.1974) (the NLRB "may properly enter a broad order ... if a Union has demonstrated a 'proclivity' to violate" the Act); see also Hickmott Foods, Inc., 242 N.L.R.B. 1357, 1357 (1979) (a broad order "is warranted only when a respondent is shown to have a proclivity to violate the Act or has engaged in such egregious or widespread misconduct as to demonstrate a general disregard for the employees' fundamental statutory rights"). The NLRB must make findings to support its determination that a respondent has a proclivity to violate the Act. Wylie, 934 F.2d at 237.
 
 Here, the NLRB ordered the Union to:
 1. Cease and desist from
 
 10
 (a) Refusing to refer or dispatch employees from its exclusive hiring facility because they exercise their rights under Section 7 of the Act, including but not limited to their right to file a charge against [the Union] with the [NLRB] and their right to refuse to obey [the Union's] request to picket an employer on [the Union's] behalf.
 
 
 11
 (b) Causing or attempting to cause employers, including [ABMC], to discriminate against James Coen and Yhya Mohamed, or any other employees, members, job applicants, or registrants, by discriminatorily refusing to refer or dispatch them to [ABMC], or to any other employer, pursuant to the operation of its exclusive hiring facility or referral system.
 
 
 12
 (c) Arbitrarily denying employees the right to review [the Union's] hiring facility records when such a request is reasonably related to an alleged failure by [the Union] to properly refer such employees to jobs.
 
 
 13
 (d) Informing employees that they are being denied access to [the Union's] hiring facility because they are not members of [the Union].
 
 
 14
 (e) In any other manner restraining or coercing employees in the exercise of the rights guaranteed in Section 7 of the Act, except to the extent that such rights may be affected by an agreement requiring membership in a labor organization as a condition of employment, as authorized by Section 8(a)(3) of the Act.
 
 
 15
 Theatre and Amusement Janitors Union, Local 9, 303 N.L.R.B. at 747.
 
 
 16
 To justify this broad order, the NLRB relied on the findings and conclusions made by the ALJ. Id. at 735 n. 2. The ALJ's decision, however, refers only to the facts that underlie the charges filed by Mohamed and Coen. Id. at 746. The ALJ did not find that the Union had committed unfair labor practices against any other person.[2] The ALJ's findings therefore are insufficient to support a broad cease and desist order because they demonstrate only that the Union committed unfair labor practices against Mohamed and Coen; the ALJ's findings do not demonstrate that the Union had a proclivity to violate the Act. See Wylie, 934 F.2d at 237 (refusing to enforce a broad NLRB order against an employer who had violated the Act twice in a two-month period); NLRB v. Brotherhood of Teamsters and Auto Truck Drivers, Local No. 85, 458 F.2d 222, 226 (9th Cir.1972) (NLRB's order held to be overbroad because "[t]he Board's findings in this case do not show any related unlawful activity directed at other employers or other employees, or that the Union sought to discriminate against employees in any manner other than the tactic used in this case"). Given the record in this case, we conclude that the NLRB abused its discretion by ruling that the Union had shown a proclivity to violate the Act.
 
 
 17
 Moreover, we find that the Union's misconduct in this case was not egregious. In Coen's case, for example, there was no evidence that the Union attempted to interfere with Coen's regular janitorial job at ACT. Indeed, when compared to the facts of other cases in which this court has enforced broad orders on the basis of egregious misconduct, the Union's violations of the Act in this case seem relatively minor. See, e.g., NLRB v. Carpenters Union Local No. 1622, 786 F.2d 903, 905-06 (9th Cir.1986) (enforcing a broad order against a union that had engaged in impermissible secondary picketing against two different employers at two construction sites, after prior charges of unlawful secondary picketing at three other sites against two additional employers had been litigated and settled); NLRB v. Local 85, Int'l Bhd. of Teamsters, 454 F.2d 875, 879 (9th Cir.1972) (enforcing a broad order because another broad order had recently been upheld against the same union; the opinion in the prior case had "noted that 'a propensity of [Local 85] for secondary boycotts often accompanied by violence is well documented by the record' ") (quoting NLRB v. Teamsters, Chauffeurs, Warehousemen & Helpers, Local 85, 448 F.2d 789 (9th Cir.1971)).
 
 
 18
 Finally, we reject the NLRB's assertion that a broad order is warranted because the Union's misconduct occurred over a period of three years. The Union's record here pales in comparison to other cases in which courts have relied on a long history of unfair labor practices to justify a broad order. See, e.g., NLRB v. Selvin, 527 F.2d 1273, 1275 (9th Cir.1975) (enforcing a broad order against employers' collective bargaining representative who "boasted to Union representatives that in the 'last 10 or 12 years, none of her clients [had] signed a contract' "); NLRB v. Local 3, Int'l Bhd. of Elec. Workers, 730 F.2d 870, 880 (2d Cir.1984) (enforcing broad order because Local 3 was "an incorrigible secondary boycotter with a two-decade-long history of secondary boycott activity that has been documented before the NLRB and this court"). Having considered the facts of this case, we conclude that the Union's misconduct does not justify a broad order that would expose the Union to the possibility of contempt sanctions in the future.
 
 
 19
 Accordingly, we modify paragraphs 1(a)-(e) of the NLRB's order as follows:
 
 
 20
 In the first line of paragraphs 1(a), (c), (d), and (e): We replace "employees" with "James Coen or Yhya Mohamed".
 
 
 21
 In paragraph 1(b), lines 3-4: We strike the phrase ", or anyother employees, members, job applicants, or registrants,".
 
 
 22
 In paragraph 1(c), line 4: We replace "such employees" with "them".
 
 
 23
 With these modifications, we enforce paragraphs 1(a)-(e) of the NLRB's order. We enforce the remainder of the order as originally written.
 
 
 24
 ORDER OF THE NATIONAL LABOR RELATIONS BOARD MODIFIED; ORDER ENFORCED AS SO MODIFIED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 As this court previously has noted, "it may appear absurd for [the Union] to protest an order requiring it to refrain from actions that admittedly would violate the [National Labor Relations Act]." See NLRB v. C.E. Wylie Constr. Co., 934 F.2d 234, 236-37 (9th Cir.1991). The Union's challenge to the broad order is motivated by the fact that, if it "is found in violation of the cease-and-desist order, it is subject not only to the normal remedial measures, but also to contempt sanctions for disobeying the order." See id. at 237
 
 
 [2]
 The ALJ's opinion makes one reference to the Union's actions toward someone other than Mohamed and Coen. The ALJ found that, in 1989, the Union's president warned Union member Francis Holland that, if he did not picket a certain movie theater, the Union would take his job. See Theatre and Amusement Janitors Union, Local 9, 303 N.L.R.B. at 737. Nevertheless, the ALJ further stated that "as in Coen's case, there is no evidence that [the Union] ever interfered with or attempted to interfere with Holland's regular job[.]" Id